Windham *v.* Williams.

UNICY WINDHAM *v.* JOHN WILLIAMS, Administrator, &c.

The recital in the record of an oath administered to a jury of good and lawful men, in these words, " who being impanelled, tried, and sworn truly to try the issue joined between the parties," &c., is *held* to be sufficient, and is sustained upon principle and authority. *Dyson* v. *The State,* 26 Miss. 362, cited and confirmed.

In finding a verdict by a jury, if more be found than is necessary, it may be disregarded as surplusage, but it does not vitiate that which is necessary and well found.

The evidence cannot be noticed by the court in this case, because it is not incorporated in a bill of exceptions, the exceptions taken not having the essential requisites of a bill of exceptions, nor does the proceeding purport to be one.

The judgment was erroneous, because it was rendered against the defendant

and sureties, upon a bond which was a different one from that which contained the slaves found by the verdict to be the property of the plaintiff.

In error from the circuit court of Neshoba county; Hon. F. M. Rogers, judge.

The opinion contains the statement of the case.

*T. J.* and *F. A. R. Wharton* for appellant.

The recital of the record is, "this day came the parties by their attorneys, and the issue joined; thereupon came a jury of twelve good and lawful men, to wit, H. E. Simmons and eleven others, who, being impanelled, tried, and sworn truly to try the issue joined between the parties, and the evidence having been heard, retired to consider of their verdict," &c. This question has been so recently and fully considered by this court, and the rule upon the subject so lucidly expounded in the cases of *The State* v. *Dyson and McCarty*, that it is scarcely necessary to do more than refer to those cases, in connection with our statute, Hutch. Co. 879, § 132, which prescribes the form of oath to be administered. That form is in the following words: "You and each of you, do solemnly swear that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you and left to your decision during the present day, (or term, as the case may be,) and true verdicts give according to the evidence; so help you God." Now is it not apparent that the oath which the record says was administered in this case does not comply, not in form merely, but in substance and materiality, in at least two or three important particulars? In this case, they were simply sworn to "truly try the issue joined." How try it, by their own private information, or the testimony of witnesses sworn and examined before them? But there is a total omission also of the very material part of the statutory oath, and a "true verdict render according to the evidence." Here they were not sworn to render any verdict whatever. If, however, it be said in reply, that this was implied, to wit, that they should render a verdict, by the words of recital above stated, "impanelled, tried, and sworn truly to try the issue joined," still the force of the objection is not met, Upon

what was such verdict to be rendered? We say they should have been sworn a true verdict to render, upon or according to the evidence. You are asked to infer that by the words quoted from the record, "who being sworn truly to try the issue joined between the parties," that they were also sworn "a true verdict to render according to the evidence;" or rather the argument on the other side, that all this is implied in law in the oath which was administered. Now you may construe the oath which the record says was administered as liberally as you please, and it is in plain language resolvable into this, "You swear truly to try the issue joined between the parties." That is the whole oath which was administered. Would any one pretend that such an oath as that can be vindicated as a substantial compliance with the formula of the statute, or with any form of oath to be found in any law-book? The record sets out the whole of the oath, therefore nothing is left to implication. If it had said that thereupon came a jury, who were duly or legally sworn, without giving the form of oath which was administered, so that this court could have seen whether it was such an oath as the law requires, there might be some reason for saying that, as all things are presumed to have been rightly done, until the contrary appears, so your honors should hold that the court below, (being in legal contemplation acquainted with the form of oath required by the statute,) when the record says the jury was legally or duly sworn, administered the proper oath.

The second error for which we think the case should be reversed is, because the verdict is an illegal one, — a nullity, indeed. It is as follows: "We the jury, find the issue in favor of the plaintiff, and he is entitled to the possession of the following negroes [naming them], Charity, valued at $250; Peter, valued at $700; Levi, valued at $850; Rainey and child, at $800; and Edy, valued at $600, and assess the value of said slaves as respectively stated above, and we further assess the plaintiff's damages for the detention of said slaves, at the sum of $900. We find the other slaves not subject to plaintiff's claim."

Here again we will probably be answered, that the record does not show that this was objected to in the court below. It

need not have been, it appears, on the record. Advantage may be at all times taken of it. The declaration charges that plaintiff unlawfully and wrongfully detains from the defendant in error certain negroes. The plea is, Not guilty. That is the issue which was tried by the jury. The verdict must respond to that issue. We submit that the above pretended verdict is unlike any one ever before heard in such form of action and on such an issue.

· The third error presented in the record is, that the judgment rendered on the foregoing verdict is equally defective and fatal. It is in these words : " It is therefore considered by the court that the said defendant, and Luke J. Hestor and Isaac B. Payne, her securities on her replevin bond, restore to the said plaintiff the said slaves, or pay him the respective values thereof assessed by the jury aforesaid, and also pay the damages aforesaid assessed by the jury for the wrongful detention of said slaves."

The judgment should have been, that said plaintiff have and recover of and from said defendant and his securities on the replevy, the said negroes, if to be had ; if not, the value of each as assessed by the jury ; not that the " said defendant restore." See Anderson v. Tyson, 6 S. & M. 244.

The fourth error upon which we rely, is because of the admission of the evidence of Benjamin Windham, who is shown by the record to have been an interested witness. An examination of the testimony will very clearly show that this objection is well taken.

The fifth error in the record is, that there was no proof that the right of action in the defendant in error, if he ever possessed such right, did accrue within one year next before suing out the writ of replevin.

The sixth ground of objection to the verdict is, that the evidence shows that John Sutton owned at his death a girl named Viney, whom he willed to Mrs. Windham, subject to the life-estate of Mrs. Sutton; that Viney was exchanged for Charity, by agreement of ·all the heirs and Mrs. Sutton, with the further understanding and agreement between them, that at the death of Mrs. Sutton, Charity was to belong to Mrs. Windham ; Mrs.

Sutton survived Huston Windham, the husband of Mrs. Unicy Windham; her life-estate in Charity did not determine in the lifetime of Huston Windham; consequently, no title ever vested in him to said girl Charity in virtue of any marital right. On the death of Mrs. Sutton, therefore, after the death of Huston Windham, the title of Mrs. Windham to said girl became absolute.

Now Charity is proved to be the mother of all the negroes found by the verdict to have belonged to Huston Windham at his death. It is therefore clear, that Huston Windham never had any title to any of the negroes sued for, and hence there was no cause of action shown in this case. The girl Charity, as before stated, never belonged to J. Sutton, who died in 1819, but was acquired in 1825 or 1826 in the manner already described.

*Glenn* for appellee.

1. Exceptions were not taken to the judgment of the court, or to the judgment overruling the motion for a new trial; therefore, there is nothing before this court. In neither case is it stated that all the evidence is included in the bill of exceptions; consequently, this court will not interfere with the verdict.

2. When property is given to a woman before marriage, as her separate property without trustee, she takes legal title, which on a marriage falls on her husband, and the property, or other exchanged for it, becomes her husband's, and his administrator may recover it. *Faulkner* v. *Faulkner*, 3 Leigh, 255.

3. Slaves in remainder pass to the husband of the legatee in remainder, the wife dying before tenant for life. *Wade* v. *Boxley*, 5 Leigh, 442.

4. If a contract is made by the wife during coverture, even in consideration of her separate property or estate, and property acquired, there being no trustee for the wife, the legal estate vests in the husband. *Barbour* v. *Bishop*, 1 East, 432; 2 Story, Eq. Jur. (5th ed.) 824, see 1386; Roper on Husb. & Wife, 169, 170; 12 Pick. 173, and cases cited; 7 Meeson & Welsby, 183.

27*

Mr. Justice HANDY delivered the opinion of the court.

The testimony appearing in the record in this case cannot be taken into consideration, because it is not properly presented by bill of exceptions. The paper alleged to be a bill of exceptions has not the essential requisites of such a proceeding. It does not purport upon its face to be a bill of exceptions, nor does it show to what alleged error it was taken, nor whether taken pending the trial, or to the overruling the motion for a new trial. It does not purport to set out all the evidence given on the trial; but on the contrary, it appears, from the grounds of the motion for a new trial, that one Benjamin Windham was examined as a witness for the plaintiff, to which the defendant excepted; and yet no such testimony is set forth in the record. The case, then, as presented here, must depend upon the points made apart from the bill of exceptions.

The first objection made to the proceedings below is, that the oath administered to the jury was insufficient. The recital of the oath in the record is, that a jury of good and lawful men came, "who being impanelled, tried, and sworn truly to try the issue joined between the parties," &c. The sufficiency of the recital of such an oath, and the principles applicable to it, were fully considered by this court in the case of *Dyson* v. *The State*, at the last term; and the oath here falls fully within the reasons there stated. It is sustained both by principle and authority. Harris, Entries, 293.

The next objection is to the verdict, which is, that "the jury find the issue in favor of the plaintiff, and he is entitled to the possession of the slaves," which are named and the value of each separately found, and the damages for detention are assessed at $900. We cannot perceive any valid objection to this verdict. It responds to the issue by finding it in favor of the plaintiff, and adds, what is probably unnecessary, but what cannot for that reason vitiate the verdict, that the plaintiff was entitled to the possession of the slaves, and finds their separate value, and the amount of damages for detention. Here every thing is ascertained which the law requires, in order to render a judgment upon the verdict. If more is found than is necessary,

it may be disregarded as surplusage, but it does not vitiate that which is necessary and well found.

Nor is there any error in the judgment, as is insisted. It is in strict conformity to the 5th section of the act of 1842, Hutch. Dig. 818, which provides that in such cases the judgment shall be, "that the defendant restore the property to the plaintiff," &c., and not that the plaintiff recover of the defendant the property, &c., as is insisted on.

Another objection is, that there was no evidence that the plaintiff's right of action accrued within one year before the commencement of the suit. We cannot determine with propriety whether this objection is well founded or not, as, according to the view above taken of the bill of exceptions, the evidence is not before us. Regarding the case as not presenting the evidence, we cannot properly ascertain whether any point is sustained by evidence or not, and therefore this objection could not prevail. But if we could notice the bill of exceptions, it would appear from it that letters of administration of the estate of the plaintiff's intestate were granted to the plaintiff in April, 1848; and the record shows that this action was instituted in June, 1848. The right of action accrued to the plaintiff by his letters of administration, and thus it appears that the right of action did accrue within one year.

The remaining ground of error urged is well founded. Upon the delivery of the slaves by the sheriff to the defendant, two bonds were executed by the defendant for the forthcoming of the slaves, one embracing the slaves named in the verdict, and the other embracing a slave not found in the verdict to belong to the plaintiff. These bonds had different sureties to them, and the judgment was rendered against the defendant and sureties upon the latter bond, instead of the bond for the slaves found by the verdict to be the property of the plaintiff. In this respect the judgment is erroneous, and is reversed; and this court, proceeding to render such judgment as should have been rendered by the court below, doth adjudge that the plaintiff in error and Luke J. Hester, Joshua McH. Hicks, and Patterson Windham, restore to the defendant in error the slaves named in the verdict and adjudged to the defendant in error, severally,

or pay him the value of each of said slaves assessed by the verdict, and also that they pay him the damages assessed by the verdict for the detention of said slaves.