EMMA SULLIVAN v. GRAND LODGE KNIGHTS OF PYTHIAS OF MISSISSIPPI.

[52 South. 360.]

**1. MARRIAGE.** *Evidence. Presumption of validity.*

A marriage solemnized in due form of law is presumed valid, and the burden of showing its invalidity is upon the party attacking it.

**2. SAME.** *Same. Conflicting presumptions.*

The presumption of the validity of a marriage, solemnized in due form of law, is superior to the presumption that a former husband or wife of one of the parties was living at the time of the second marriage of the party.

**3. SAME.** *Case.*

Facts examined and a second marriage adjudged to have been invalid.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Mrs. Sullivan, appellant, was plaintiff in the court below; the Grand Lodge Knights of Pythias of Mississippi, appellee, was defendant there. Mary Davis was interpleaded by the defendant. From a judgment awarding to Mary Davis the money brought into court by defendant, the plaintiff appealed to the supreme court. The facts are fully stated in the opinion of the court.

*McKnight & McKnight,* for appellant.

The peremptory instruction asked by the plaintiff, Emma Sullivan, and refused by the court, should have been given: (a) because plaintiff made out a case entitling her to recover; (b) because the case made out by plaintiff was not overcome by

the proof in favor of the defendant; (c) because the burden was upon defendant to overthrow both the proof made by plaintiff that her intestate was the wife and sole heir of Jacob Davis, deceased, and the presumption of law in favor of marriage which surrounds said marriage; (d) because the appellee failed in her attack upon the right of appellant to recover on the policy sued on; (e) because the proof of record shows that the appellee was, by reason of a prior and existing marriage with one Brown Hunter, incapacitated to enter into the marriage contract at the time of her alleged marriage with some Jake Davis in the fall of 1892; (f) because appellee utterly failed to show that she was ever married to or even ever saw the Jacob Davis who died the holder of the policy sued on.

A marriage prior to 1892 having been shown and admitted between appellee and one Brown Hunter, and there being no pretense that Brown Hunter was dead or divorced from appellee before the alleged marriage between appellee and some Jacob Davis in 1892, it follows that the court below erred in refusing the second instruction asked by plaintiff.

Even if the very meagre testimony of the appellee (who alone testified upon the subject) could or should be strained to amount to the semblance of proof that Brown Hunter is dead at all, it certainly was not entitled to that dignity as proof which would preclude a dispute as to whether Brown Hunter was alive at the time of appellee's alleged marriage to some Jacob Davis in 1892, yet this is the practical effect of the refusal of the second instruction asked by appellant and refused by the court below.

While the learned gentleman who sat as judge in this case in the court below freely instructed the jury that Mary Davis, the apppellee, must show that she was lawfully married to Jacob Davis, yet no critical reading of the record is necessary to see that by "lawfully married" he meant married by license regardless of her capacity or incapacity to marry, and persistently

refused to depart from this position and therefore refused the third instruction asked by appellant because it contained the words "being an unmarried woman at the time" which we submit was error.

The court below erred in refusing the instructions asked by the appellant and refused by the court below, then it follows for the same reason that the court below erred in giving the instruction asked by the defendant appellee.

The proof did not justify the giving of this instruction and especially should it not have been given because of appellee's failure to identify the Jacob Davis she claimed to have married with the Jacob Davis who held the policy sued on and because the proof showed that the appellee had a living husband at the time of her alleged marriage with Jacob Davis in the fall of 1892.

The court below erred grievously in holding that the burden was upon appellant to show the invalidity of the marriage between Mary Hunter and Jacob Davis and that the invalidity of the said marriage between Mary Hunter and Jacob Davis could be shown only by positive proof that Brown Hunter was actually alive at the time of the marriage of Mary Hunter to Jacob Davis and this error led the court below into the further error, first, of stopping counsel for plaintiff in their argument before the jury and forbidding them in the presence of the jury to say to the jury that Brown Hunter could not be presumed to be dead as the effect of the statute presuming death from seven years death, and, second, of refusing to allow counsel for plaintiff to argue the evidence as showing that Brown Hunter was alive at the time of the alleged marriage between Mary Hunter and Jacob Davis.

To the contrary of the holding of the court below, as stated in the last paragraph above, the court below should have held, that the burden was on the appellee, Mary Davis, to show affirm-

atively the invalidity of the marriage between appellant's intestate and Jacob Davis (which marriage was made the basis of the right of plaintiff to recover and which marriage the appellee was attacking, she having taken upon herself the position of a defendant in the suit and having stepped into the shoes, so to speak, of the defendant insurance company under the provisions of Code 1906, § 772), by establishing affirmatively the validity of a former marriage between Jacob Davis and herself while both he and she were free from incapacity to contract marriage.

*N. Vick Robbins,* for appellee, Mary Davis.

Under the pleadings in this case, two questions were presented for determination in the lower court:—

First. The identity of the Jacob Davis married to Mary Hunter in Washington county, in 1892, and the Jacob Davis killed in Vicksburg in October 1906; and

Second. The validity of the marriage between Jacob Davis and Mary Hunter.

The first question, to-wit: the identity of Jacob Davis has been passed on by the jury in the court below and resolved in favor of the appellee. So the attitude of appellee here is that the Jacob Davis that was killed in Vicksburg in October 1906 is the self same Jacob Davis to whom appellee was married in 1892, in Washington county, Mississippi.

Counsel for appellant insists that there is no evidence in the record to establish this identity. In answer to this we invite the attention of this court to the testimony of Moore, Burns and Bowman.

We invite the attention of the court to the case of *Wilkie v. Collins,* 48 Miss. 496. The facts in the case are strikingly similar to those in the case at bar and the question presented for adjudication to this court is identical.

Argued orally by *Theodore McKnight,* for appellant, and by *N. Vick Robbins,* for appellee.

Smith, J., delivered the opinion of the court.

On the 25th day of October, 1906, Jacob Davis, a member of appellee order, died intestate, and the holder of an endowment policy in said order for the sum of $500, payable at his death to his widow or other heirs. The appellant filed a declaration in the court below, alleging that her intestate, Menthia Davis, who died on the 23d of July, 1907, was the widow and the sole heir at law of Jacob Davis, and prayed for judgment against appellee for the sum of $500, alleged to be due under said policy. Appellee, having filed its affidavit stating that it was ready to pay the $500 as the court might direct, and alleging that "a third party, Mary Davis, a resident citizen of Sharkey county, without collusion with the defendant, has a claim to the subject of action in the above-styled cause," an order was entered directing appellee to pay said sum of $500 into court, and that summons issue for the said Mary Davis to appear and maintain or relinquish her said claim thereto. Mary Davis thereupon appeared, propounded her claim to the said $500, claiming that she was the widow and sole heir of the said Jacob Davis. From a judgment awarding said money to the said Mary Davis, this appeal is taken.

It appears, from the marriage records of Warren county and from the testimony of the minister of the gospel who performed the ceremony, that the rites of matrimony were celebrated between the said Jacob Davis and Menthia Davis, appellant's intestate, on or about the 18th day of March, 1899; and it further appears from the evidence that they thereafter lived and cohabited together as man and wife until Jacob's death. On behalf of Mary Davis it was shown, from the records of Washington county and by the minister of the gospel who performed the ceremony, that the rites of matrimony were celebrated between the said Jacob Davis and Mary Davis in September. 1892. It further appears that, after living together five or six years in Washington and Sharkey counties, Jacob left Mary and moved

to Warren county.   On cross-examination of Mary Davis, it appeared that in 1886 or in 1887 she was married to one Brown Hunter in Sharkey county, that they lived together two or three years, and that Brown Hunter, having gotten into some sort of trouble, left Mary, since which time she has not seen him, and had heard that he was dead.   By agreement of counsel it also appears "that the records of Sharkey, Warren, and Washington counties do not show any decree of divorce granted dissolving the bonds of matrimony between one Mary Davis, the defendant, and any Jacob Davis, or any one else."

One of appellant's assignments of error is that the court erred in refusing to grant her a peremptory instruction.   Her first contention is that the marriage of Mary and Jacob Davis was void, for the reason that Brown Hunter was not shown to be dead at the time same was contracted, and was not shown to have been then absent for a sufficient length of time for his death to be presumed.   There is some confusion in the books upon this subject, but it is settled in this state that, where a marriage has been solemnized in due form of law, it will be presumed to be valid, and that this presumption is superior to, and will overcome, the presumption of life.   The burden of showing the invalidity of the marriage is upon the party attacking it.   *Spears v. Burton,* 31 Miss. 555; *Wilkie v. Collins,* 48 Miss. 511; *Railway Co. v. Beardsley,* 79 Miss. 417, 30 South. 660.   In *Wilkie v. Collins* the court said: "If no other fact appeared, but simply the marriage, the presumption is in favor of validity.   But there is also a presumption in favor of the continuance of life, which is only overcome by a protracted absence for the time specified.   In such circumstances, founded on considerations of policy, and in favor of innocence, the presumption in favor of the marriage will prevail, as against that of the continuance of life; and it will devolve upon the disputant of the marriage to overcome it by testimony that the first

husband was living at the time of the second marriage." Under the evidence, therefore, the marriage of Mary and Jacob must be presumed to have been valid.

But it is said that the law also presumes the validity of the marriage between Jacob and Menthia, and that the burden devolves upon the party attacking same—that is, upon Mary Davis—of showing its invalidity; that is, that the former marriage of Mary and Jacob had not been dissolved by death or divorce. This is, of course, true and it was so held by this court in *Railway Company v. Beardsley, supra;* but this burden was met by Mary. She herself was living, and the proof showed, as clearly as a negative can ever be shown, that no divorce had been obtained by her or by Jacob. The evidence shows that after their separation, which occurred in Sharkey county, Jacob lived continuously in Warren county; that she continued to, and now does reside in Sharkey county. A decree of divorce would have to be shown by the record, and under the agreement of counsel the records of those counties show no such decree. It follows, therefore, that no such decree was ever made. If authority is needed for this proposition, it can be found in *Schmisseur et al. v. Beatrie,* 147 Ill. 210, 35 N. E. 525.

Appellant also contends that the Jacob Davis who was married to Mary was not identified as the same Jacob Davis who was afterwards married to Menthia. There was sufficient evidence, particularly the testimony of John Bowman, from which the jury could find this fact. There was no error in the other matters complained of.

There is an apparent conflict between the case of *Willkie v. Collins* and *Railway Company v. Beardsley, supra,* relative to the validity of the last marriages therein involved; that is, the ones therein which correspond to the marriage of Jacob and Menthia in the case at bar. An examination of these cases, however, will disclose that in the former case the court seems

not to have considered the presumption of validity attaching to this marriage, and which casts the burden of showing its invalidity upon the party attacking same. The case was permitted to turn upon the validity of the first marriage alone.

The rule announced in *Railway Company v. Beardsley* is a correct one, and is supported by the weight of authority.

*Affirmed.*