WALLACE v. HERRING.

In Banc. Nov. 28, 1949

No. 37249 (43 So. (2d) 100)

Everett & Sanders, for appellant, Percy Wallace.

**P. J. Townsend, Jr.,** for appellee, Anna Wallace.

B. B. Allen, for appellee and cross-appellee, Eva May Wallace.

Montgomery, J.

L. A. Wallace died intestate in Sunflower County, Mississippi, on July 6, 1946, leaving certain personal property and also his homestead in which he was at the time living with his wife Anna and a non compos mentis child Eva May Wallace by a former marriage. He had been married three times. His first marriage was a ceremonial marriage to Ida in Coahoma County on October 8, 1913. They returned immediately after the marriage to Sunflower County, where they lived as husband and wife until Ida left him in about 1918 or 1919 and moved to Belzoni, where she stayed two or three years and then moved to Chicago, Cook County, Illinois. The second marriage was to Percy on January 6, 1919 in Sunflower County. It was also a ceremonial marriage. Percy and the deceased lived together in Sunflower County until about 1939 or 1940, when she left him and moved to Itta Bena, in Leflore County. She lived in Itta Bena until 1941, when she moved to Chicago. She continued to live there up until the time of the trial. L. A. Wallace's

third marriage was to Anna in Coahoma County on July 3, 1939. After the marriage ceremony had been performed they returned to Wallace's home in Doddsville, Sunflower County, where they lived together as husband and wife until Wallace died. Eva May Wallace, who was L. A. Wallace's daughter by his first marriage to Ida, lived in the home with them. L. A. Wallace continued to live in Sunflower County until his death, and there was no record of any divorce between these parties in Sunflower County.

On the death of L. A. Wallace his second wife, Percy, petitioned for letters of administration to be issued on the estate, waived her right to serve as administratrix, and prayed for the appointment of N. E. Pentecost as administrator. Letters were duly granted and issued to Pentecost and he entered proper bond and took the oath of office.

The estate was less than $500.00 and the order appointing the Administrator dispensed with the publishing of notice as provided by Section 567 of the Code of 1942, and notice to creditors was posted as therein provided.

Pentecost proceeded to administer the estate and filed his final account with his petition praying for his discharge. In this petition he set up the various claims of the two wives, Anna and Percy, and of the claim of Eva May, the daughter of the first wife Ida, who had died, and prayed that these parties be served with process to show cause, if any they could, why the final account should not be approved and allowed and that the court adjudicate to whom the proceeds of the estate belonged.

Anna Wallace and Percy Wallace each claimed the estate as the lawful wife of L. A. Wallace, deceased, and Eva May Wallace, through her guardian ad litem appointed by the Court, claimed the entire estate upon the theory that her mother, Ida, was the lawful wife, of the deceased, and that on the death of L. A. Wallace she and her mother each inherited a one-half interest, and that

on the death of her mother the half inherited by the mother passed to her as the sole surviving heir.

The Court below found that the third wife, Anna Wallace, was the lawful wife of the deceased and that Eva May was his lawful child, and that on his death one-half of the estate passed to the wife Anna, and the other half passed to the child Eva May. From this judgment the second wife, Percy, appealed and the child Eva May cross-appealed, contending that she was entitled to the whole estate rather than the one-half allowed her by the Court.

■■■ The marriage between L. A. Wallace and Anna Wallace being a ceremonial marriage raised a presumption that the former marriages of L. A. Wallace had been dissolved either by death or divorce and the burden of overcoming such presumption rested on the parties asserting the invalidity of the marriage. This rule is well established in this State and about it there can not be any doubt. Vaughan v. Vaughan, 195 Miss. 463, 16 So. (2d) 23; Colored Knights of Pythias v. Tucker, 92 Miss. 501, 46 So. 51, 52; Alabama & V. Ry. Co. v. Beardsley, 79 Miss. 417, 30 So. 660, 89 Ann. St. Rep. 660.

In fact it was said in Vaughan et al. v. Vaughan, supra, that this presumption arising from a subsequent marriage that prior marriages had been dissolved by divorce is one of the strongest presumptions known to the law, and will prevail unless overcome by competent evidence to the contrary.

The evidence in this case shows that Anna married L. A. Wallace on July 3, 1939, and that they lived together as man and wife in Doddsville, Sunflower County, until Wallace died on July 6, 1946, and that no divorce was ever granted dissolving the marriage between these parties. Hence, this marriage is presumed valid and the law presumed that all previous marriages of L. A. Wallace had been dissolved either by death or divorce, and the burden of proving that Wallace had a living and un-

divorced spouse at the time of his marriage to Anna was on those asserting the invalidity of this marriage.

To meet this burden, the second wife, Percy, offered evidence to prove that she was also ceremonially married to Wallace on January 6, 1919, and that she and Wallace lived together until 1938 when she left him and moved to Itta Bena, Leflore County; that she lived in Itta Bena from 1938 until November, 1941, when she moved to Chicago, where she continued to live up until the time of the suit. It was proven that there was no divorce between these parties in Sunflower County nor in Leflore County. It was then undertaken to prove that there had been no divorce in Cook County, Illinois, by introducing the certificate of the Clerk of the Circuit Court of Cook County to the effect that no divorce had been obtained in that court, and also the certificate of the Superior Court of Cook County to the effect that no divorce had been obtained in that court. Both certificates were objected to on the ground that the certificates do not show that the signer of the certificate is in fact the clerk, which is another way of saying that neither of the certificates were authenticated under the Federal statute, Section 687, Title 28 U. S. C. A., which reads as follows:

"The acts of the legislature of any State or Territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such State, Territory, or country affixed thereto. The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

Beginning back one hundred years ago in the jurisprudence of this State, it was held in Stuart v. Swanzy, 12 S. & M. 684, 20 Miss. 684, which was decided in 1849, and continuing with Bates v. McCully, 1854, 27 Miss. 584, 5 Cushm, 584; Melius v. Houston, 1866, 41 Miss. 59; Hope v. Hurt, 1881, 59 Miss. 174; Verhallen v. Laveochia, 1901, 79 Miss. 370, 30 So. 710; and on down through R. J. McLin & Co. v. Worden, 1911, 99 Miss. 547, 55 So. 358, in an unbroken line of decisions that a judicial record of another State can not be proved or admitted in the courts of this State as evidence of a fact until there has been a compliance with Section 905 of the Revised Statutes of the United States, Section 687, Title 28 U. S. C. A.

Accordingly the certificates of the Clerk of the Circuit Court of Cook County and of the Clerk of the Superior Court of Cook County, were not competent evidence to establish the fact that no divorce had been obtained in Cook County, Illinois, because there had been in the preparation of these certificates no compliance with the act of Congress above mentioned.

It is said by counsel for appellant that Section 1726 of the Code of 1942 eliminates the necessity for compliance with the act of Congress and that under it these certificates were competent evidence. Section 1726, Code of 1942, reads as follows: "Any certificate, attestation, or authentication, purporting to have been made or given by any person as an officer of any state or of the United States, shall be prima facie evidence of the official character of such person."

Let it be noted, however, that Section 1726 of the Code of 1942 was brought forward from the Code 1880, wherein it was Section 1629 of that Code, and was in effect at the time of the decision in Hope v. Hurt, 59 Miss. 174, wherein this Court said:

"Was the record from the County Court of Shelby County, Tennessee, in due form? It consisted of a copy of the letters of administration granted to the plaintiff

and a certificate that he was in that court accountable for the claim sued on, but it was certified only by the clerk of the court under his seal of office and lacked the authentication of the presiding judge as required by the Act of Congress prescribing the mode of authenticating the records of the courts of one State to be used in another. * * *

"It is said by Professor Greenleaf, 1 Greenl. Evid., Redfield's ed., Sec. 505, that the mode of authentication prescribed by Congress is not exclusive of any other which the States may see proper to adopt, and the statement seems to be borne out by the decisions of those States which have prescribed other methods of authentication, but our State has not done this. By Section 1622 of the Code of 1880 a mode of authenticating private writings which have been legally recorded in other States is provided, and by Section 1629 it is enacted that the certificate or attestation of any person purporting to be a public officer of another State shall be deemed prima facie evidence of his official character in the courts of this State, but nowhere do we find any mode of authenticating the records of the courts of other states laid down by our lawgivers. We must construe this as indicative of the intention of the legislature to adopt the Act of Congress on this subject or rather a legislative willingness to leave the matter to be controlled by the federal legislation on the subject, and such we think has been the professional understanding and practice in the State."

We adhere to the former decisions of this Court which are above enumerated, and which we feel are sound and should be followed, and clearly announce the rule that a judicial record of another State can not be proved or admitted in the courts of this State as evidence of a fact until there has been a compliance with the authentication Act of Congress.

It follows from this that the second wife, Percy, failed to meet the burden that was on her to establish that

L. A. Wallace's previous marriage to her had not been dissolved by divorce at the time of consummation of Wallace's marriage to Anna. Failing to prove that there was no divorce the presumption following the marriage to Anna that the former marriage to Percy had been dissolved by divorce became conclusive under the rule announced in Vaughan et al. v. Vaughan, supra.

Eva May Wallace proved that her mother, Ida, was ceremonially married on October 8, 1913, to L. A. Wallace, and that she lived with him in Sunflower County until she left him and went to Belzoni in about 1918 or 1919 and from Belzoni she moved to Chicago, where she lived until she died in Tuberculosis Hospital on December 23, 1947. It was proven that there was no divorce in Sunflower County and no divorce in Humphreys County. There was no proof offered as to whether or not there had been a divorce in Cook County, Illinois. Hence, on the failure of this proof the presumption flowing from the marriage between L. A. Wallace and Anna that his previous marriage to Ida had been dissolved by divorce became conclusive in the absence of being overcome by competent evidence to the contrary.

From what had been said it follows that Anna was the lawful wife of the deceased, and Eva May was his lawful child, begot in wedlock with his first wife Ida, and that Anna and Eva May were entitled to share his estate equally under the laws of descent and distribution in this State.

We find no error in the decree of the lower court and it will be affirmed on both the direct appeal and on the cross-appeal.

Affirmed.