JEFFREYS, et al. *v.* CLARK, et al.

No. 43194 November 16, 1964 168 So. 2d 662

*F. L. Hutchinson,* State College, for appellant, C. T. Phennix.

*W. H. Jolly,* Columbus, for appellant, Mrs. J. M. Jeffreys.

*Ben F. Hilbun, Jr., P. L. Douglas,* Starkville, for appellees.

BRADY, TOM P., J.

This cause originated in the Circuit Court of Oktibbeha County and the first trial thereon was held on January 31, 1963, as cause number 10020. At the close of the

evidence in this trial, counsel representing the plaintiffs entered a voluntary nonsuit without prejudice against the defendant, C. T. Pennix. Counsel representing the defendant, Mrs. J. M. Jeffreys, asked for a mistrial, which was denied, and the case was submitted to the jury against Mrs. Jeffreys alone, and a mistrial occurred since the jury could not reach a verdict. Subsequent to this term of court, counsel for Mrs. Jeffreys moved for a change of venue to Washington County, where the appellant resides, and counsel representing the appellee entered a nonsuit against Mrs. Jeffreys.

On March 21, 1963 suit was refiled against both defendants, appellants here, Mrs. Jeffreys and C. T. Pennix, which was tried on October 23, 1963. This trial resulted in a verdict in favor of the plaintiffs, appellees here, in the amount of $23,000, and it is from this verdict and judgment that the appellants prosecute this appeal.

The record discloses the following facts: On April 6, 1961, around 4:00 P. M., the deceased, Willie Clark, obtained a ride in the truck with the defendant, Mr. C. T. Pennix, from the city of Starkville to the Adaton community, at the intersection of U. S. Highway 82 and the Self Creek Road. The defendant, C. T. Pennix, was driving in a westerly direction on U. S. Highway 82 and had driven some six or seven miles west of Starkville, Mississippi and had turned from Highway 82 into the Self Creek Road, which branches off of Highway 82 in a southerly direction. The defendant, C. T. Pennix, turned off at or near a store known as Christopher Store, located on the south side of Highway 82 and east of the Self Creek Road. The defendant, Mrs. J. M. Jeffreys, together with two passengers, was operating her Oldsmobile automobile in an easterly direction along U. S. Highway 82 and approached the Self Creek Road at the time the defendant, C. T. Pennix, turned to the left in order to drive down the Self Creek Road. The cars collided, Mrs. Jeffrey's car striking Mr. Pennix'

truck a little behind the cab door on the right side. Mr. Pennix' truck, which was proceeding in a southerly direction, was reversed so that when it stopped it was facing north. The guest, Willie Clark, was thrown out of the truck, and when it came to a stop, his head and shoulders were on the road and his feet were in the cab of the truck. Willie Clark was carried immediately to the hospital in Starkville, Mississippi, where he remained for approximately eleven days. He was subsequently transferred to the Mattee Hersee Hospital in Meridian on Monday, April 17, where he died on Saturday, April 22.

The facts as testified to by the defendant, Mr. C. T. Pennix, and as testified to by the defendant, Mrs. J. M. Jeffreys, and her two passengers, Mrs. W. D. Bennett, by deposition, and Mrs. Victoria Dismuke, who took the witness stand, are in sharp conflict in almost every material fact tending to show either that the negligence of the defendant, C. T. Pennix, was the sole proximate cause of the accident, or that the negligence of Mrs. J. M. Jeffreys was the sole proximate cause of the accident. Testimony of the patrolman, Preston Nichols, also controverted certain parts of the testimony of Mrs. Jeffreys. The testimony related to the speed at which Mrs. Jeffreys was operating her automobile. Mr. Pennix testified that Mrs. Jeffreys was traveling at the rate of eighty miles per hour, while Mrs. Jeffreys estimated the speed to be not over fifty miles per hour, before she applied her brakes. The position of the truck and the automobile at the time of the collision is likewise in dispute, Mr. Pennix claiming that all of his truck was off of Highway 82 except the right rear wheel. Mrs. Jeffreys asserted that the truck was directly in front of her, in her lane of traffic, with possibly only the right front wheel being off the highway and two car lengths east of Self Creek Road. Mr. Pennix asserted that he gave a left hand signal when Mrs. Jeffreys

was about 450 feet away; that he had to travel only 50 feet while she had to travel 400 or 450 feet before reaching Self Crook Road. Mrs. Jeffreys denied that Mr. Pennix gave any signal and said that she did not see any signal, and that when he was approximately two car lengths ahead of her he suddenly turned his truck in front of her so that it was impossible for her to do anything to avoid striking him. It is also disputed whether or not Mrs. Jeffreys drove her car off Highway 82 onto the right shoulder, where she struck the truck driven by Mr. Pennix. It is disputed where the point of this collision took place, whether it was in the Self Creek Road or whether it was east thereof, in front of Christopher Store. There were no skidmarks except those made by the right rear tire of the truck owned by Mr. Pennix when it was knocked around. Mrs. Jeffreys testified that she applied her brakes as hard as she could, but there were no tire marks in the road to indicate that she had braked the wheels so that tire or skidmarks were made on the highway. She stated that she was not going fast enough to leave tire marks.

The record discloses that the deceased, Willie Clark, a Negro, had been married to the appellee, Birtha Clark, for about sixteen years; that of this marriage and union there were six children, ranging in age from seventeen years to five years, four of the children being girls, aged seventeen, fifteen, twelve and five, and two being boys, aged eleven and seven. The marriage records of Oktibbeha County reveal that Birtha Thomas and Willie Clark were married on August 28, 1944. Appellant likewise introduced records to show that the appellee, Birtha Clark, approximately seven years before, had married Willie Thomas on December 24, 1937. It was agreed that the divorce records of Oktibbeha County failed to show a divorce between Birtha Thomas and Willie Thomas, and appellee, Birtha Clark, admitted that she had not obtained a divorce from Willie Thomas.

The record also shows that the deceased, Willie Clark, was either fifty-four or fifty-nine years of age at the time of his death; that at fifty-nine he had a reasonable life expectancy of 16.47 more years; that he had enjoyed good health prior to the accident and that he was earning $134 per month salary at the time he died; that he had worked as a janitor for twelve years at Mississippi State University and that during that period of time had not been off from his job more than two days.

The record discloses that only the deceased's neck was x-rayed, but that the investigation and examination by Dr. Copeland failed to reveal that he had sustained any broken bones. He complained, at the time he entered the hospital, of pain in the neck region, and examination disclosed that he had sustained abrasion over the shoulder and over one leg, and there were abrasions on his back. The doctor testified that, in his opinion, he could have sustained a concussion from the collision, and that subsequent to his entrance into the hospital he deteriorated rapidly; that in his opinion this was caused by complications following the accident and hospitalization, which would be his cause of death. The doctor believed that the injuries which he received in the accident were the stimulus or thing which set off the chain of events which eventually led to the death of Clark on April 22.

The hospital bill incurred at the J. W. Eckford Memorial Clinic in Starkville was $44, representing visits for a period of eleven days, from April 6 through April 17. The jury brought in a verdict and assessed the damages at $23,000, including the hospital bill, finding also that both defendants were responsible for the accident, and finding further that Mrs. J. M. Jeffreys is responsible for eighty percent, or $18,400, and Mr. C. T. Pennix is responsible for twenty percent, or $4,600.

Sixteen errors are assigned by the appellant, Mrs. Jeffreys, the first fifteen of which were embodied in the motion for a new trial filed by the appellants. The

sixteenth error assigned was that the court was in error in overruling the defendant's motion for a new trial. It is to be noted, however, that the appellant, Mrs. Jeffreys, in her brief, presents only four errors which are assigned, and although this Court has read the record and carefully considered the other errors assigned, it fails to find that there is any merit in these errors and therefore will direct its attention principally to the errors which are presented in the briefs of counsel for appellants. We will treat first the errors which have been assigned by the appellant, Mrs. J. M. Jeffreys, and next the errors which have been assigned and presented in the brief by the appellant, Mr. C. T. Pennix. Where there is overlapping of errors, and where both appellants have assigned the same errors, they will be considered jointly so that errors assigned by Mr. Pennix can be simultaneously disposed of with errors assigned by appellant, Mrs. Jeffreys.

Turning now to point one, which is that the defendant's, Mrs. Jeffreys', motion for a change of venue should have been sustained, we find that the gravamen of the motion and the error is that the plaintiffs never filed either their first suit, No. 10,020, or the second suit, No. 10,088, in good faith. Insofar as the first suit is concerned, the moving finger has written and has moved on and this Court does not have any jurisdiction now to pass upon issues of law which were raised in the first suit, for the reason that there was a voluntary nonsuit taken as to both of the appellants, and there is now nothing before this Court, except that which is properly brought before this Court by the way of introduction of agreed evidence originally offered in the trial of the first cause. This suit, No. 10,088, is a new suit filed in which both these appellants were named in the lower court as defendants.

The appellant, Mrs. Jeffreys, urges that the court was in error in the second trial in stating that ''the

court would not and will not permit a nonsuit if the evidence is the same as it was before in the trial of this case against Mr. Pennix.'' While it is true that wisdom and caution advise against deciding issues which have not yet arisen, and in this regard the lower court did not act wisely, still we do not believe the fact that the court ruled as it did constitutes such error as to prejudice the rights of either appellant. The ruling did not inject into the case for consideration by the jury any issue which had not already been raised by the pleadings and which was not substantiated by the testimony, either in behalf of the appellants or the appellee. It is true, as urged by counsel representing appellant, Mrs. Jeffreys, that Mississippi Code Annotated section 1538 (1956) does permit the plaintiff to take a voluntary nonsuit at any time before the case is submitted to the jury, but this right of the appellee does not interfere with or prejudice the rights of appellant, Mrs. Jeffreys, insofar as the trial of this case is concerned, because we hold that the appellant Pennix was properly sued and brought into this case as a defendant.

Appellant cites the case of New Biloxi Hospital, Inc. v. Frazier, 245 Miss. 185, 146 So. 2d 882 (1962) as authority in support of her contention that a change of venue should have been granted to the appellant, Mrs. Jeffreys. In that case, the facts reveal that Dr. Smith, as well as the New Biloxi Hospital, Inc., were both guilty of contributory negligence which proximately caused the death of the deceased, a patient. In that case, after the case had been called, both sides announced ready and the jury was placed in the box and was accepted by the plaintiffs. The plaintiffs' counsel at that time dismissed their cause of action against Dr. Smith for the reason that a settlement had been consummated, Dr. Smith being the resident defendant of Jackson County, in which county the cause of action was brought. Immediately after the cause of action had been dismissed

against Dr. Smith, the hospital moved for a change of venue to Harrison County, the county of its domicile. This motion was overruled and we held in that well reasoned case that it was properly overruled. The lower court stated in that case that since the case had proceeded thus far that the corporate defendant was not entitled to a change of venue at this time. After discussing sections 1433 and 1441, we held in the case of Biloxi Hospital, Inc. v. Frazier, *supra,* that where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists: The action was brought in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant. The joinder of the local defendant was not fraudulent or frivolous with the intention of depriving the nonresident defendant of his right to be sued in his own county, and there was a reasonable claim of liability asserted against the resident defendant. The testimony and evidence in the case at bar fail to show that there was any fraudulent or frivolous joinder of the defendant, Mr. Pennix. It also fails to show that there was any collusion or fraud perpetrated upon the appellant, Mrs. Jeffreys, by appellees and appellant, Mr. Pennix, or the attorneys representing these litigants. The action was begun in good faith and with the bona fide belief that the appellees had a good cause of action against the appellant, Mr. Pennix. The testimony in this case shows that this was a well founded belief upon which the jury could base its verdict that the appellant, Mr. Pennix, was guilty of negligence which proximately caused the wreck and injuries complained of. Therefore, the joinder of Mr. Pennix as a defendant in the suit below was neither a frivolous joinder of a nonresident defendant or a fraudulent joinder, and the plaintiffs asserted a reasonable claim of liability against him. Based upon

the pleadings, the proof and the arguments of counsel, it is clear to us that the appellees had a valid claim of negligence, which proximately caused the injuries, against the appellant, Mr. Pennix, for submission to the jury.

While in the Biloxi Hospital case it is evident that the settlement produced the dismissal insofar as Dr. Smith is concerned, and although it is not evident in this case why the appellee decided to take a nonsuit in Cause No. 10,020 against Mr. Pennix, other than the statement given by counsel in the arguments made to the lower court, which was that because of the personnel of the jury they preferred not to have Mr. Pennix involved in the verdict, we cannot say that the dismissal, insofar as Mr. Pennix was concerned, of itself establishes fraud or that it shows that the joinder was a fraudulent one, nor can we say either that the discussions had between counsel representing Mr. Pennix and counsel representing appellees constituted fraud or bad faith, or that there was collusion so as to make the joinder of the appellant, Mr. Pennix, a fraudulent and frivolous one. If there had been no reasonable claim of liability asserted against the resident defendant, Mr. Pennix, then the grounds urged by appellant, Mrs. Jeffreys, would merit serious consideration by this Court, but after reviewing the evidence and the pictures introduced, we have reached the conclusion that there is no question about the negligence of appellant, Mr. Pennix, being a contributing cause of the wreck, and we cannot say that the jury could not have found under these facts, if they had believed the testimony of the appellant, Mrs. Jeffreys, that the negligence of Mr. Pennix was the sole, proximate cause of the wreck and injuries.

In order to sustain the contention of appellant, Mrs. Jeffreys, that the joinder of appellant, Mr. Pennix, was a fraud and a frivolous one, this Court would be required to plumb and fathom the mind of the appellee and

to evaluate the motives of counsel representing the appellees insofar as the voluntary nonsuit against Mr. Pennix is concerned. Neither this Court nor any other court can analyze the motives of a person except as reflected by that person's statements and acts, and the only sure test is whether or not the joinder of the person alleged to be fraudulent is found to be a bona fide joinder in that the person joined was guilty of the sole or contributory negligence to the cause of action. If this basic requirement is found to be present, and there is not substantial evidence or proof that there was a fraudulent or frivolous joinder only to prevent removal, this Court will decide this issue upon the question of actual negligence, which we have done in this instance. It is to be noted that counsel for Mrs. Jeffreys concedes that a strong case of liability was proved against appellant, Mr. Pennix. The joinder of the local defendant therefore was not a fraudulent or frivolous one, done with the intention of depriving the nonresident defendant of her right to be sued in her own county.

As the testimony developed, it was actually a factual question as to which appellant was primarily responsible for the injury, and the jury had sufficient evidence before it of such a conflicting nature that it had ample grounds to determine and find that there was joint liability on the part of both appellants. We have, furthermore, in this case a complicated set of circumstances from which it could not have been told in advance of full development of the case whether the appellant, Mr. Pennix, would or would not be held liable by the jury. It could not be determined whether or not the appellant, Mrs. Jeffreys, could have been held liable by the jury, and the lower court did not err in refusing to grant the motion of the appellant, Mrs. Jeffreys, for a change of venue after the case had been concluded and after the appellee had dismissed the case against the appellant, Mr. C. T. Pennix. See New Biloxi Hospital,

Inc. v. Frazier, *supra;* McAlpin v. McAlpin, 245 Miss. 25, 147 So. 2d 623 (1962); Dukes v. Sanders, 239 Miss. 543, 124 So. 2d 122 (1960); Illinois Cent. R. R. v. Fowler, 123 Miss. 826, 86 So. 460 (1920).

The facts in this case are easily distinguishable from the facts in Long v. Patterson, 198 Miss. 554, 22 So. 2d 490 (1945), and in Howard v. Ware, 192 Miss. 36, 3 So. 2d 830, Annot., 140 A.L.R. 1284 (1941). We cannot hold that the appellee joined the appellant, Mr. Pennix, in this case, knowing at that time that no recovery could be had against Mr. Pennix. The proof is exactly to the contrary — that Mr. Pennix was guilty of negligence and that this negligence was the sole and proximate cause of the wreck and injuries. Furthermore, the plaintiff was entitled to take a voluntary nonsuit at any time before the case was submitted to the jury.

Turning now to point two, that the verdict in the instant case was contrary to the evidence and the law applicable thereto, and to point three, that the form and the amount of the verdict in this case showed bias and prejudice on the part of the jury, we have already pointed out that there exist sharp conflicts of evidence insofar as the negligence charged in the declaration against the appellant, Mrs. Jeffreys, and the appellant, Mr. C. T. Pennix, is concerned. In urging point two, counsel for appellant, Mrs. Jeffreys, submits that, because of the lapse of time between the accident and the death of Willie Clark, and because of the fact that the death certificate shows that the cause of his death was not known, and because of the fact that there were no broken bones or abrasions shown in the testimony, this case is very weak. We disagree because the testimony of the doctor shows that in his opinion there was a causal connection between the injuries received by Willie Clark in the wreck and his resultant death. The doctor testified that Clark seemed to progressively deteriorate

and got to where he had no control over his bowels and bladder and that he lost the ability to sustain himself when walking and had to be put in a wheelchair. A question of fact for consideration by the jury was made.

There was evidence offered by Dr. Copeland to justify the jury in believing that Clark had sustained a concussion. It does not follow that because no broken bones were present and appellant says there were no abrasions, although the proof shows that there were abrasions to the shoulder, leg, and over the back of the deceased, that the deceased's death was not a direct result of the accident. We cannot invade the province of the jury and hold, as is urged, that the verdict is contrary to the evidence insofar as the injuries and death of Willie Clark are concerned.

■■ ■ The appellant, Mrs. Jeffreys, further urges that it is obvious from the record that if Mr. Pennix had not made the turn in violation of law, being in violation of the Mississippi Code Annotated section 8192 (1956), the accident never would have occurred, and the fact that Mr. Pennix paid a fine for a traffic violation is also proof of the fact of appellant's, Mr. Pennix', negligence. Counsel for Mrs. Jeffreys also urges that the record clearly shows that she did everything she could to avoid the wreck and that it was utterly impossible for her to avoid the collision under the circumstances reflected in the record.

Again, these are question of fact for determination by the jury. These issues of fact were controverted and denied and only the jury could properly say who was negligent in causing the wreck. For the same reason, we cannot hold that the form and the amount of the verdict in this case shows bias and prejudice on the part of the jury. The testimony in this case, though complicated, ultimately presented for consideration by jury all of the major points relative to the determination of the

proximate cause, and the contributing causes, of the wreck.

It is the contention of counsel representing Mrs. Jeffreys that the amount of the verdict in itself, considering all the angles of this case, was preposterous and so much in excess of what the proof justified, that this Court will not permit the verdict to stand. We do not find any merit in this last contention.

Counsel representing appellant, Mrs. Jeffreys, urges that the lower court erred in permitting testimony offered by the appellee that the deceased would have lived and would have worked 16.47 years at the same salary that he was making at the time of his death, and in not sustaining the objection of appellant's counsel to the statements made by appellees' counsel that the deceased would have earned $32,000 when he had worked for twenty years, his life expectancy at fifty-four years of age, at $1,608 per year. Appellant, Mrs. Jeffreys, urges that this is improper because when the deceased would have reached the age of sixty-five years, he would have completed more than fifteen years of service, and asserts: "At any rate, there was no way under the law, for him to work past the age of 70." If there were no other elements of damage in evidence other than the life expectancy, and the salary or wages which he would have earned during the remainder of his life expectancy, be it 20 or 16.47 years, we would consider the assertion by appellant, Mrs. Jeffreys, that the verdict is excessive so as to evince bias and prejudice.

The record discloses, assuming that the deceased was fifty-four years of age and that he would work up to the time he was sixty-five years of age, that he would have earned approximately $17,688. If, however, he was fifty-four and worked until he was seventy, the present age of appellant, Mrs. Jeffreys, then, at $1,608 per year, he would have earned approximately $25,728. Assuming that the deceased was fifty-nine years off age and was

going to retire at sixty-five, he would have earned approximately $9,648. If, however, he decided to work until he was seventy, which is a period of eleven years, he would have earned approximately $17,688. We do not know of any law which requires a man to quit working at the age of sixty-five or seventy, and many men are still working at the age of seventy and beyond, and they are not drawing social security. There is no proof in this record that the deceased would have been forced to retire at age sixty-five, nor is there any proof that he could not have increased his earnings between now and the time he actually did quit. Since he would have earned $17,688 if the jury determined he was fifty-four years of age and he did retire at age sixty-five, we feel that this amount could have been properly determined by the jury as the present value of the pecuniary advantage which the evidence disclosed the parties interested had a reasonable expectation of deriving from the deceased had he continued to live and work. In addition to the wages which the deceased would have earned up to the time he retired at sixty-five years of age, we have the pain and suffering which the deceased underwent prior to his death; we have also the loss of companionship in society which his death occasioned members of his family, together with his medical expenses. Considering all of these elements, we cannot say that the verdict is excessive; and we do not believe that it can be earnestly maintained that the jury was prejudiced against the appellants in favor of the appellees. Illinois Cent. R. R. v. Sanders, 229 Miss. 139, 90 So. 2d 366 (1956); Illinois Cent. R. R. v. Coussens, 223 Miss. 103, 77 So. 2d 818 (1955); S. H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858 (1917).

Insofar as the testimony of the witness Clisby is concerned, and the measuring of the time it took to make the statements which were alleged to have been made by appellant, Mrs. Jeffreys, and her friend, we do not

feel that there is merit in this alleged error or that any injustice was worked against the appellant by the manner and the means whereby it was shown that during the time it took to make these statements the car of the appellant, Mrs. Jeffreys, had traveled a certain number of feet. We feel that these were matters which were properly considered by the jury in determining whether or not the appellant, Mrs. Jeffreys, had exercised the due care and caution she should have used as she approached the intersection, when she saw the co-appellant turn suddenly to the left across the highway in front of her. The jury heard the statements made by appellant, Mrs. Jeffreys, and her sister, Mrs. Victoria Dismuke. They were able to judge the length of time it took these witnesses to make the statements. They likewise heard the statement asked of Mrs. Jeffreys and they observed the timing thereof. We do not believe that there was any prejudice to the rights of the appellants by this procedure as it was conducted on the part of the appellee.

■■ ■ Irrespective of the holdings in Natchez Coca-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677 (1931), and Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470 (1924), we feel that the question of the life expectancy, and the damages which the appellees could rightfully obtain on account of the negligent death of the deceased, were properly submitted to the jury. ■■ ■ In the case of Natchez Coca-Cola Bottling Company v. Watson, it was pointed out by this Court that in permitting the recovery for ''all damages of every kind to any and all parties interested in the suit,'' (160 Miss. at 182, 133 So. at 680), the parties interested can recover, not the value of a decedent's life expectancy, but the present value of any pecuniary advantage which the evidence disclosed the parties interested had a reasonable expectation of deriving from the decedent had he continued to live. We

feel that the instructions granted in the case at bar do not do violence to the rule of law which is laid down in the case of the bottling company against Watson, *supra,* as shown by the interpretation we placed upon the damages which can be recovered, which, tersely stated, is: Any pecuniary advantage which the interested parties had a reasonable expectation of deriving from the deceased had he continued to live.

In point four of appellant's, Mrs. Jeffrey's, brief, it is urged that the case should have been dismissed by the lower court because of the proof of the invalidity of the purported marriage of the plaintiff, Birtha Clark, to the deceased, Willie Clark. The line of decisions under the Mississippi Code Annotated section 463 (1956), holding that there is a strong presumption of the validity of marriage, should remove the necessity for our commenting at any great length on point four. It is to be remembered that on December 24, 1937, the appellee, Birtha Clark, married one Willie Thomas. The record shows, as testified to by the appellee, that Birtha Thomas married Willis Clark on August 28, 1944. The appellee testified that she did not get a divorce from Willie Thomas. The record is entirely silent as to where Willie Thomas lived subsequent to the time he and his wife, Birtha, the appellee, were separated. There is no showing where Willie Thomas was during the time of the marriage of Birtha Thomas to Willie Clark, which was approximately sixteen years. There is no showing on the part of appellants that Willie Thomas had not obtained a divorce from Birtha Thomas, nor is there any showing that Willie Thomas was in fact alive at the time of the marriage of Birtha Thomas to Willie Clark. The law in this state is well settled that a ceremonial marriage raises the presumption that a former marriage has been dissolved, either by death or by divorce, and that the burden of overcoming such presumption rests squarely upon the

party asserting the invalidity of the marriage, and the presumption of the validity of a marriage solemnized according to law is superior to the presumption of life, and the presumption arising from a subsequent marriage that a prior marriage has been dissolved is one of the strongest presumptions known to law and will prevail unless overcome by confident evidence to the contrary, and it is not sufficient to show that one of the parties had not obtained a divorce. ■■ ■ Furthermore, the burden is upon the person or parties who are asserting the invalidity of the marriage. There is no proof in this case that Willie Thomas lived in Mississippi most of the time between the separation and his wife's subsequent marriage. ■■ ■ The court was correct in overruling the motion of the appellant upon the introduction of all of appellee's evidence to dismiss the cause on the ground that there was no valid marriage between Birtha Clark and Willie Clark. Wallace v. Herring, 207 Miss. 658, 43 So. 2d 100 (1949); Vaughan v. Vaughan, 195 Miss. 463, 16 So. 2d 23 (1943); Sullivan v. Grand Lodge, K. P., 97 Miss. 218, 52 So. 360 (1910). This being true, there is no question here of the illegitimacy of the children, and therefore Mississippi Code Annotated section 1453 (1956) has no application.

■■ ■ Turning to the assignment of errors filed by the appellant, C. T. Pennix, we hold that the motion of the defendant, C. T. Pennix, for dismissal of the action was properly overruled by the court below, for the reason that the evidence was conflicting and the jury had sufficient evidence upon which to base its finding that the negligence of C. T. Pennix, as heretofore stated, was the sole, proximate or contributing cause of the wreck. The second error urged by appellant, Mr. Pennix, that the court should have instructed the jury to deliberate further, we find to be without merit for the reason that it is a well established rule in this

state that where, in a verdict, everything essential is ascertained which is required by the law in order to render a judgment upon the verdict, it is sufficient, and that if more is found than is necessary it may be disregarded as surplusage, but it does not vitiate that which is necessary and well found. This is exactly what happened in the verdict of the jury in the case at bar, and the lower court was correct in not requiring the jury to return and to deliberate further on their verdict. Meridian City Lines, Inc. v. Baker, 206 Miss. 58, 39 So. 2d 541 (1949); Windham v. Williams, 27 Miss. 313 (1854).

Point three of appellant, Mr. Pennix, which is that the case should have been dismissed because of the invalidity of the purported marriage of Birtha Clark and the deceased Willie Clark, has already been held to be without merit when we considered the same error raised by appellant, Mrs. Jeffreys.

 ██ Appellant's contention that there is no evidence in the record that Mr. Pennix failed to give a signal before turning, we find to be incorrect. The testimony of Mrs. Jeffreys, her sister, Mrs. Dismuke, and of the other companion in the car, Mrs. W. D. Bennett, was sufficient to raise the question of whether or not the appellant, Mr. Pennix, actually gave a signal. Mrs. Jeffreys testified, ". . . all of a sudden Mr. Pennix just turned directly in front of me. It was so close I did everything I could to avoid the wreck but I could not do it and I just had to hit him." In response to the question, had he given any signal or indication, Mrs. Jeffreys said: "If he did, I didn't see one thing about it."

"Q. And you had been watching the vehicle?

"A. Yes, I saw him coming and he just turned. He didn't say anything, right in front of me."

Mrs. Jeffreys further testified that at the time Mr. Pennix turned, she made the statement: "Look at that man, he has turned right in front of me." In addition

to the statements by Mrs. Jeffreys, her sister, Mrs. Dismuke, testified as follows:

"Q. Could you tell whether or not he gave any signal to turn?

"A. I didn't see any signal. I surely didn't, and I was looking right at him."

In addition to this, Mrs. W. D. Bennett, who was on the front seat of the car with Mrs. Jeffreys, likewise testified as follows:

"INTERROGATORY NO. ELEVEN: Please state if you can, whether the driver of the other vehicle gave any signal evidencing intention to turn.

"A. Observed none."

We hold therefore that there is no merit in the assignment made by appellant, Mr. Pennix, that there is no evidence in the record that Mr. Pennix failed to give a signal and the court was correct in submitting this question of fact to the jury.

Insofar as assignment five is concerned, which is substantially the same error urged by the appellant, Mrs. Jeffreys, and since we have already stated that there was no error committed for which the case should be reversed because of the statement of the circuit judge, namely, that he "would not and will not permit a nonsuit if the evidence was the same as it was before in the trial of this case this time against Mr. Pennix", there is no merit in this contention of appellant, Mr. Pennix. Appellant cannot complain that the appellee, because of the court's statement, could not have taken a voluntary nonsuit at any time for the reason that the appellant did not try to take a voluntary nonsuit in this trial. No effort was made in that regard, and the proof shows conclusively that appellant, Mr. Pennix, was jointly negligent in the operation of his car, and that his negligence, coupled with the negligence of Mrs. Jeffreys, was the sole and proximate cause of the injuries received by the appellee. If the appellee had desired to take a non-

suit against appellant, Mr. Pennix, and had made a motion to do so, and if the circuit court at that time had declined to permit the appellee to do so, then the question presented by appellant, Mr. Pennix, would be squarely for review by this Court, but the proof shows that the appellee did not desire to take a nonsuit against either appellant at any time during the second trial of this cause and therefore it cannot be logically held that appellant, Mr. Pennix, was prejudiced. Appellant, Mr. Pennix, wholly failed to prove that the appellee would have taken a nonsuit against appellant, Mr. Pennix, except for the statement which was made by the court, or that this statement made by the court had any bearing whatsoever upon the verdict of the jury.

For these reasons, we do not feel that reversible error was committed in the court below and the judgment of the lower court is hereby affirmed.

Affirmed.

*Lee, C. J., and McElroy, Rodgers and Jones, JJ.,* concur.