2000 ME 11

**Sean A.R. HAYNES, Personal Representative of the Estate of Bruce Jagoe**

v.

**Michael JACKSON.[1]**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 30, 1999.

Decided Jan. 24, 2000.

Francis M. Jackson, Jackson & MacNichol, Portland, for plaintiff.

Stacey Jackson, Limington, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] This is an appeal from a judgment entered in the Superior Court (Cumberland County, *Delahanty, J.*) in favor of Sean A.R. Haynes as personal representative of the estate of Bruce Jagoe and against Michael Jackson. The court rescinded a deed that Jackson had obtained from Jagoe and declared the deed "null and void *ab initio* " thereby vesting ownership of the property in Haynes in his capacity as Jagoe's personal representative. Jackson argues that the court erred in entering a summary judgment and in denying a motion to vacate the judgment. Because the motion to vacate the orders, the notice of appeal, and a supporting brief in this appeal, were filed by Michael Jackson's wife, Stacey Jackson, who is not an attorney and is not permitted to engage in the practice of law, we grant Haynes's motion to dismiss the appeal.

---

1. Michael Jackson died on August 30, 1999 of renal cell cancer. Jackson's wife, Stacey Jackson, asserts that she is Michael's personal representative, although she offers no proof of this fact. Stacey, in accordance with M.R. Civ. P. 25(a)(1), filed a notice of death and motion for substitution of party with this Court on September 10, 1999.

[¶ 2] In October of 1997, Haynes, in his capacity as personal representative of the estate of Bruce Jagoe, filed a complaint in the Superior Court alleging that Michael Jackson had breached the terms of a land sale contract between Jackson and Jagoe.[2] Count I alleged that before the contract had been completed, Jackson obtained the deed from Jagoe for a sum that was less than the sum enumerated in the contract. Haynes sought compensatory damages for the breach. Count II sought rescission of the deed given by Jagoe to Michael Jackson, alleging that Jackson had unduly influenced Jagoe into conveying the property at a time when Jagoe was "emotionally distraught from the recent death of his wife, was suffering from serious drug problems and was not competent."

[¶ 3] Acting pro se, Jackson filed his answer to the complaint in December of 1997. He denied the allegations and asserted that the deed he obtained from Jagoe was valid. In November of 1998, Haynes filed a motion for a partial summary judgment on his breach of contract claim and Jackson's emotional distress and fraud counterclaims. The motion included a statement of material facts that was supported by appropriate record references. Jackson did not respond to the motion.

[¶ 4] On January 26, 1999, the Superior Court mailed Jackson a notice informing him that a trial management conference would be held on February 17, 1999, and that motions to continue could be filed no later than February 10. On January 29, the court issued an order regarding Haynes's failure to file a report of conference of counsel that was due in November of 1998. The court assessed sanctions against Haynes and ordered him to complete the report within ten days. The court also invited Haynes to file a motion for a default judgment if Jackson refused to cooperate in preparing the report.

[¶ 5] Haynes did file a motion for default judgment on February 8, 1999, asserting that Jackson had "never responded by phone or by mail" to any inquiries and that Haynes had "no effective way to enlist [Jackson's] cooperation in preparing a report of conference of counsel." Haynes requested that the court enter a default judgment and grant his unopposed motion for a partial summary judgment. Jackson did not respond to the motion for default.

[¶ 6] On February 17, Stacey Jackson, acting under a power of attorney granted to her by Michael, filed a motion for postponement, asserting that Michael had been diagnosed with kidney cancer in May of 1998 and that he was unable to respond to the claim because his cancer treatment left him confused, forgetful, and frequently ill. Despite being in the courthouse on February 17 to file her motion, Stacey did not attend the trial management conference that was scheduled for that day. On February 18, the court granted Haynes's motion for a partial summary judgment based on Jackson's failure to respond to the motion. *See* M.R. Civ. P. 7(c). On February 19, the court granted a default judgment in favor of Haynes on all claims and counterclaims "[b]ecause [Jackson] has failed to respond pursuant to [the] appropriate rules."

[¶ 7] The court allowed Haynes to select the claim under which relief would be granted. Haynes asked for relief under Count II, the rescission claim, and the court rescinded the deed from Jagoe to Jackson, declaring it "null and void *ab initio*." The result of the judgment was that the property at issue in the case "remain[ed] in [Haynes] in his capacity as the personal representative of the Estate of Bruce Jagoe, and never vested in the defendant."[3]

2. The contract called for Jackson to pay Jagoe $400 per month for twelve years, at which time Jagoe was to convey the property to Jackson. The total amount of the monthly payments was $57,600.

3. The court did not address the restitutional aspect of rescission. *See Masters v. Van Wart,*

[¶ 8] On March 30, 1999, Stacey, acting pursuant to the power of attorney from Michael, and without counsel, filed a motion to vacate the orders entered on February 18 and 19. In her motion, she made several factual claims that were not supported by an affidavit. Stacey asserted that because of her husband's kidney condition, he had been "unable to function in a normal manner." She had, therefore, agreed to act as his attorney-in-fact under a power of attorney executed on September 18, 1998. Stacey stated that she knew nothing of the case until she received two letters from the court in early February of 1999. After receiving those letters, she went to the Cumberland County Courthouse on February 11 and asked how she could seek a postponement. She was told to contact the opposing attorney, which she did on February 16. He objected to the motion, and she noted the objection on the motion for postponement she filed on February 17.[4] Stacey asserts that she had no knowledge of the trial management conference that was scheduled for that day.

[¶ 9] The court denied Stacey's motion, and Stacey filed a notice of appeal. In July of 1999, Haynes moved in this Court to dismiss the appeal on the ground that the notice of appeal was not "filed by the actual party Defendant below, Michael Jackson." Stacey filed two motions of her own with this Court, a motion requesting that the Court recognize her as Michael's legal representative in these proceedings, and a motion for reversal of judgment, or in the alternative, an order remanding to the court of proper jurisdiction.[5] We ordered that all three motions "be considered along with the merits of the appeal."[6]

[¶ 10] In the power of attorney on which Stacey relies, Michael granted his wife sweeping powers as his attorney-in-fact. He granted Stacey the power "[t]o exercise, do, or perform any act, right, power, duty or obligation whatsoever that I now have or may acquire the legal right ... [to] do or perform in connection with ... any ... matter whatsoever." The power was not to be removed because of Michael's disability or incapacity. It was to be terminated, however, if Michael was ever adjudged incompetent or upon Michael's death. Though the power of attorney granted by Michael did not specifically identify the power to appear and defend his rights in legal proceedings, a fair read-

---

125 Me. 402, 407, 134 A. 539, 541–42 (Me. 1926) (because rescission is an equitable remedy which seeks to return the parties to the positions they were in prior to the agreement, the remedy is not complete unless restitution of consideration is made by the plaintiff). Nor did the court's decision address the effect of rescission of the deed on the original land sale contract.

4. In her motion to vacate, Stacey also made several factual claims concerning the merits of the case. She acknowledged that a land sale contract existed between her husband and Bruce Jagoe and stated that Jagoe approached Michael in 1995 "about paying the property off." She claimed that at that time, Michael was current on his payments and had paid a total of $17,600 under the land sale contract. Stacey described the subsequent agreement reached by Jagoe and Michael: "My husband agreed to give Mr. Jagoe 2 cars, 1 Winnibago, 1 truck, I motorcycle w / extras and $3,500. The value agreed upon being $19,800 as the final payment." Finally, Stacey stated that the subsequent agreement was

reached, and the contract was signed and the deed was delivered only after both parties responded to extensive questions as to their willingness to complete the transaction.

5. The motion to reverse the judgment was accompanied by a brief which was signed by Michael Jackson. A cursory inspection of the handwriting, however, reveals that the brief was written by Stacey.

6. Pursuant to the appeal, Stacey submitted both a brief and an appendix of sorts entitled "Affidavits/Exhibits." This "appendix" contains numerous documents including (1) Michael Jackson's death certificate, signed on August 30, 1999; (2) a notarized letter from the County of Cumberland describing the role of notaries when assisting people in land transactions; (3) a letter from Michael's oncologist dated November 30, 1998 declaring him "partially disabled"; (4) a notarized affidavit from John Aceto supporting Stacey's account of the deed transaction; and (5) a copy of the 1995 deed.

ing of the document would include such a power.[7] The question remains, however, whether Michael could properly grant his wife that power.

[¶ 11] Haynes contends that Maine law does not permit legal representation by non-lawyer representatives in the courts and that, although an attorney-in-fact may be empowered to defend suits on behalf of her principal, she must do so through counsel rather than personally.

■■■ [¶ 12] We must determine whether state statutes and the rules promulgated by the Supreme Judicial Court[8] allow Stacey to proceed with this appeal in the circumstances of this case. We conclude that she is unable to do so. Our power of attorney statute permits a grantor to delegate a broad range of powers.[9] *See* 18–A M.R.S.A. § 5–508(e) (Supp.1999) ("the generality powers of an attorney-in-fact in a power of attorney ... is not limited by the inclusion in the power of attorney of a list of the specific powers granted to the attorney-in-fact").[10] Section 5–508 does not contain any language that limits the scope of a power of attorney only to those areas in which the principal could act through an agent. *See* 18–A M.R.S.A. § 5–508 (Supp. 1999). Standing alone, then, § 5–508 does not *prevent* a principal from granting his attorney-in-fact the power to appear pro se on the principal's behalf.

■■ [¶ 13] The statute prohibiting the unauthorized practice of law, however, limits the scope of § 5–508. It is a Class E crime to practice law in Maine without first obtaining admission to the bar. *See* 4 M.R.S.A. § 807(1) & (2) (Supp.1999). Section 807(3) does contain more than ten exceptions to the general prohibition, allowing, for example, officers or employees of businesses or government agencies to appear in court for special purposes, but it does not provide an exception authorizing an attorney-in-fact to appear pro se on behalf of her principal. *See* 4 M.R.S.A. § 807(3) (Supp.1999).

[¶ 14] Title 4 section 860 allows parties to "plead and manage their own causes in court or do so by the aid of such counsel as they seek to employ," but that section provides no authority for parties to appear through their attorneys-in-fact. *See* 4 M.R.S.A. § 860 (1989). At one time, "any citizen of good moral character who produce[d] in court a letter of attorney was permitted" to represent his principal. *See* R.S. ch. 93, § 45 (1930) (the precursor to today's § 860).[11] In 1931, however, the statute was amended to delete that language. *See* P.L.1931, ch. 176, § 5 (striking the language quoted above). In the same Act, the legislature repealed a provision that merely prevented non-lawyers from receiving payment for legal services and replaced it with a provision that made it a crime to practice law unless admitted to

---

7. For example, the document gives Stacey the power to sue to recover Michael's debts, as well as engage in any transaction of any kind.

8. The power to regulate the practice of law belongs to the Judicial Branch. *See Board of Overseers of the Bar v. Lee,* 422 A.2d 998, 1002 (Me.1980).

9. Michael granted his wife the power of attorney in August of 1998, so it is governed by 18–A M.R.S.A. § 5–508 (Supp.1999), which became effective in April of 1998. *See* P.L. 1997, ch. 683, § C–6 (effective April 3, 1998).

10. The only exception to that rule is that a power of attorney for health care must be explicit. *See* 18–A M.R.S.A. § 5–508(f) (Supp. 1999).

11. The full text of the provision was as follows:

**Sec. 45 Management of causes by parties or counsel.**

Parties may plead and manage their own causes in court or do so by the aid of such counsel, not exceeding two on a side, as they see fit to employ; or by any citizen of good moral character who produces in court a letter of attorney for that purpose; but no person whose name has been struck from the roll of attorneys for misconduct shall plead or manage causes in court under a power of attorney for any other party, or be eligible for appointment as a trial justice, or justice of the peace.

R.S. ch. 93, § 45 (1930).

the bar. *See* P.L.1931, ch. 176, § 4 (repealing R.S. ch. 93, § 31 (1930)). It is clear that the intent of that legislation was to prohibit the use of a power of attorney to allow a non-lawyer to practice law.

[¶ 15] The subsequent enactment of the broad power of attorney statute does not change the strict limitations on the unauthorized practice of law. Contrary to Stacey's contention, the power of attorney statute does not authorize her to appear personally in court for Michael, her principal. *See* 18–A M.R.S.A. § 5–508 (Supp. 1999). Nor do any of the rules adopted by the Supreme Judicial Court provide authorization for Stacey to act as an attorney for her husband by filing pleadings or appeals. Because Stacey was not authorized to act as Michael's attorney, her actions in this case can be given no effect. *See National Publicity Soc. v. Raye,* 115 Me. 147, 151, 98 A. 300, 302 (Me.1916) (the prohibition of unauthorized practice of law applies not only to the actor but also to the acts undertaken); *see also Boyer v. Boyer,* 1999 ME 128, ¶ 4 n. 2, 736 A.2d 273, 275 n. 2 (when father of minor child filed response to motion for summary judgment, the submission was given no effect). Accordingly, the appeal must be dismissed.[12]

The entry is:

Appeal dismissed.

---

**12.** Although we must dismiss this appeal filed by Stacey, the provisions of Rule 60(b) are available as a means of presenting to the trial court the merits of the contentions of Michael in regard to the judgment of that court and any issue of Michael's capacity.