# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01900-SCT

*IN RE: IN THE MATTER OF THE ESTATE OF*
*SARATH SAPUKOTANA; PALIHAWADANAGE*
*RAMYA CHANDRALATHA FERNANDO*

*v.*

*MARTHA GAY WEAVER SAPUKOTANA*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/2013 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE, JR. |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | NITIN KAUSHIK |
| | JAMES M. BROWN |
| ATTORNEYS FOR APPELLEE: | WAYNE DOWDY |
| | DUNBAR D. WATT |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 12/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     The present case calls upon this Court to determine the validity of a Florida divorce decree issued in 1995. Sarath Sapukotana (Sarath) and Palihawadanage Ramya Chandralatha Fernando (Fernando) were married in Sri Lanka in 1992. Sarath moved to the United States a year later. In 1995, a Florida court entered an uncontested divorce decree, dissolving the marriage of Sarath and Fernando. In 2004, Sarath then married Martha Gay Weaver Sapukotana (Martha) in Mississippi. Sarath died intestate in 2008 from injuries which led to

a wrongful death suit. The trial court granted Martha's petition to be named the administratrix of the estate, over the objection of Fernando, Sarath's first wife. This allowed Martha to file, and later to settle, the wrongful death claim. Fernando claims that the 1995 Florida divorce decree was fraudulent and void for lack of service of process, and that she instead is the rightful beneficiary to Sarath's estate and to the proceeds of the wrongful death action. Fernando filed a motion to vacate the chancery court's decision to appoint Martha as administratrix of Sarath's estate. The chancery court dismissed Fernando's motion and held that Martha was the rightful beneficiary to Sarath's estate. Fernando appeals. Because the Wayne County Chancery Court lacked authority to vacate the 1995 Florida divorce decree, we affirm the decision of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. Sarath and Fernando married in Columbo, Sri Lanka, on February 5, 1992. Both Sarath and Fernando were Sri Lankan citizens. Sarath then moved to the United States in July 1993.

¶3. Approximately two years later, Sarath filed for a divorce from Fernando in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. In response, Fernando allegedly signed a Waiver of Process, an Answer, and a Waiver for Dissolution of Marriage, in which she waived service of process and agreed to all terms of the divorce. The waiver appears to have been notarized by a notary public in Sri Lanka. On October 25, 1995, the Broward County Circuit Court dissolved the marriage between Sarath and Fernando.

¶4.　　On February 11, 2004, Sarath married Martha in Mississippi.[1] Sarath's marriages did not produce heirs.

¶5.　　Sarath then filed for a second divorce from Fernando on February 15, 2007, in the District Court of Colombo, Sri Lanka. The divorce complaint stated that Sarath had gone to the United States for employment on or about July 7, 1993, in order to have a better future. After repeated failed attempts to bring Fernando to the United States, Sarath returned to Sri Lanka "with the intention to continue married life with [Fernando] in their marital residence . . . ." Instead of welcoming Sarath, "[Fernando] with her relatives and a few unknown people in the house came to assault the plaintiff." Fernando refused Sarath's further attempts to reconcile their marriage, and Sarath filed for a divorce on the grounds of malicious desertion. Fernando contested the complaint and moved for the complaint to be dismissed *in limine*. Sarath returned to Mississippi shortly afterwards.

¶6.　　Sarath was employed as a truck driver and, while in Arizona, he was involved in an eighteen-wheeler accident on January 3, 2008. On January 8, 2008, Sarath died intestate as the result of his injuries. The divorce action in Sri Lanka remained pending.

¶7.　　On February 4, 2008, Martha filed a Petition for Letters of Administration in the Chancery Court of Wayne County, alleging that Martha was Sarath's sole beneficiary and requesting appointment as administratrix of the estate.[2] Sarath's estate consisted mainly of

---

[1]Another document entered into evidence indicated that Sarath was also married to a third person, Sharon Toni Stewart. A final judgment dissolving this marriage was entered on June 12, 2002.

[2]Fernando maintains that at this time she first learned of the Florida divorce decree.

3

the damages accrued from the wrongful death suit. He owned no real property and his personal property included a vehicle jointly owned with Martha, clothing, and other effects. Fernando filed a Reply to the Petition for Letters of Administration on February 8, 2008, alleging that the Florida divorce decree was invalid, that Sarath's marriage to Martha was bigamous, and that Fernando continued to be the lawful spouse of Sarath. Fernando also alleged that Sarath's marriage to Martha was a sham marriage in order to obtain a green card. Fernando requested that Premalal Ranasinghe (Premalal) be appointed administrator of Sarath's estate as attorney-in-fact for Fernando. Premalal stated that he was an attorney in Sri Lanka and had completed twenty-four credits at the New York Law School in order to take the New York Bar Examination.

¶8.     On March 25, 2008, the Wayne County Chancery Court granted Martha's petition and named Martha as the administratrix of Sarath's estate. In the hearing transcript on the motion, the trial judge stated that Martha was the proper administratrix of the estate, because at that time, the trial court was required to give full faith and credit to the Florida divorce decree. The trial judge reasoned that Martha would pursue the wrongful death claim, and then the funds would go into the estate. The funds would be held in the estate until a determination could be made under Mississippi law as to who the wrongful death beneficiaries would be. No appeal was taken from this decision. Martha then filed a wrongful death suit in the United States District Court for the District of Arizona on May 28, 2008, naming as parties Martha and the Estate of Sarath, by and through its representative Martha.

4

¶9.     Around June 2009, in the Broward County Circuit Court in Florida, Fernando filed a Motion for Vacating Judgment of Divorce. On August 27, 2009, Martha filed a Motion to Intervene. On November 4, 2009, the Broward County Circuit Court entered an order confirming that Fernando voluntarily had withdrawn her motion challenging the 1995 divorce decree without prejudice. Fernando stated that she had withdrawn the motion for technical reasons.

¶10.    Fernando next filed a motion to intervene in the Arizona wrongful death suit on November 29, 2009. Fernando argued that she was the lawful wife of Sarath and moved the Arizona court to declare the 1995 Florida divorce decree null and void. On July 20, 2010, the district court denied Fernando's motion to intervene and found that it was precluded from reviewing state court judgments involving matters of domestic relations, and that the United States Supreme Court had divested the federal courts of power to issue divorce decrees. Fernando appealed to the Ninth Circuit Court of Appeals and filed a petition for writ of certiorari with the United States Supreme Court. Both of these appeals were denied.

¶11.    On June 4, 2012, the parties to the wrongful death action stipulated to the dismissal of the Estate of Sarath Sapukotana as a party to the lawsuit. On the same day, the remaining parties reached a settlement in the action and stipulated to the dismissal of the matter with prejudice.

¶12.    On July 23, 2012, Fernando filed a Motion to Remove the Personal Representative Based on Fraud and Abuse of Process, to Determine the Validity of the Florida Divorce and to Determine the Beneficiary of the Estate in the Wayne County Chancery Court. Premalal

was the only person who signed the motion. Premalal was not admitted pro hac vice in the state of Mississippi, and no Mississippi attorney appeared for Fernando. Fernando argued that Martha deceitfully had dropped the estate as a party in the wrongful death action and had settled the suit, because Martha could not prove that she was the rightful wife of Sarath. Fernando again maintained that the Florida court lacked subject matter and personal jurisdiction to enter a divorce decree. Fernando asked the court to remove Martha as administratrix and to replace her with Premalal, to order Martha's attorneys to deposit the settlement money with the court, to schedule a full evidentiary hearing to determine the validity of the Florida divorce decree, to declare the beneficiary of Sarath's estate, to pay any outstanding bills of the hospital, to sanction Martha's attorneys for dropping the estate's claim, and to allow the new administrator of the estate to reinstate the wrongful death action. Martha filed a counterclaim to the motion on August 6, 2012, requesting a declaratory judgment and a hearing to find that Martha was the decedent's only wife at the time of his death and was his sole beneficiary.

¶13.   On August 15, 2012, the Chancery Court of Wayne County, Mississippi, dismissed Fernando's motion and granted Martha's counterclaim. The chancery court found that Premalal was a foreign attorney not licensed to practice law in Mississippi and that Premalal had failed to comply with the provisions of Mississippi Rule of Appellate Procedure 46(b)(2), which allow a foreign attorney to appear in a Mississippi court pro hac vice. Because of his failure to comply with Rule 46, the Court struck Fernando's motion. The court additionally granted Martha's counterclaim, holding that Sarath and Martha were lawfully

6

married in Missisippi and no appeal had been taken from the court's decision to grant Letters of Administration to Martha, thus Sarath and Martha were husband and wife at the time of Sarath's death. The court also determined that, at the time of his death, Sarath had a fixed place of residence in Wayne County, Mississippi.

¶14. On September 10, 2012, Fernando filed a Motion to Vacate the Judgment Dated August 15, 2012, arguing that the chancery court lacked subject matter jurisdiction to grant Martha's request for declaratory judgment.[3] Fernando contended that the court did not have subject matter jurisdiction because, under Rule 12(a) of the Mississippi Rules of Civil Procedure, she had thirty days to file her reply to the counterclaim. The hearing date was set twelve days after Martha filed the counterclaim. Fernando claimed that she was given inadequate notice for the hearing. Only Martha's attorney was present at the hearing; Fernando was not represented. Fernando additionally argued that if the court determined that the counterclaim was an independent claim, Martha had violated Rule 4 because no summons had been served. Fernando then contended that the court lacked jurisdiction to grant a declaratory judgment because the court had failed to consider the validity of the Florida judgment. Fernando argued that she should have an opportunity to present evidence to challenge the validity of the Florida divorce decree.

¶15. The chancery court denied Fernando's motion to vacate on October 14, 2013. The chancellor stated that, "despite written and telephone requests by this Court, neither party has submitted a complete copy of the Florida divorce file." The chancellor reasoned that

---

[3]This motion was filed by Premalal and additionally signed by associated local counsel James M. Brown from Laurel, Mississippi.

determining the validity of the Florida divorce decree with an incomplete record was virtually impossible and that, regardless, the statute of limitations and the doctrine of laches barred Fernando's claims. The court also stated that, under the comment to Rule 57, counterclaims and cross-claims may seek declaratory relief, but that the rule does not state that counterclaims and cross-claims must be served with summonses.

¶16.   Fernando now appeals the chancellor's decision denying the Motion to Vacate the Judgment Dated August 15, 2012, and presents nine issues:

> I. Whether evidence of the Sri Lankan divorce proceeding in 2007 established a prima facie case of the invalidity of the Florida divorce decree.
>
> II. Whether the Florida divorce decree can be collaterally attacked by a non-resident if the Florida court lacked personal and subject matter jurisdiction.
>
> III. Whether the Florida court had personal jurisdiction over Fernando.
>
> IV. Whether Sarath was domiciled in Florida at the time of the divorce action.
>
> V. Whether the chancellor erred by ruling before considering evidence filed on the 2007 Sri Lankan divorce proceeding.
>
> VI. Whether the chancellor erred in finding that the Chancery Court of Wayne County was not an appropriate jurisdiction to challenge the Florida divorce decree.
>
> VII. Whether the Florida divorce decree is void for lack of service of process.
>
> VIII. Whether the chancellor erred in finding that the doctrine of laches barred Fernando's claim.
>
> IX. Whether the chancellor applied an incorrect standard of law in admitting the waiver of service into evidence but declining to admit the Sri Lankan complaint into evidence.

**ANALYSIS**

8

¶17. "This Court will not disturb the decision of a chancellor that is supported by substantial evidence unless the chancellor's decision was manifestly wrong, clearly erroneous, or an incorrect legal standard was applied." *Pierce v. Pierce*, 132 So. 3d 553, 560 (Miss. 2014) (citing *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (Miss. 2012)). Questions of personal and subject matter jurisdiction are reviewed de novo. *Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011) (citations omitted).

¶18. In the August 15, 2012, judgment, the chancellor first dismissed Fernando's motion because Premalal, the sole person who signed the motion, was not licensed to practice in this state and was not admitted pro hac vice. Premalal stated that he was an attorney at law in Sri Lanka and that he was taking credits at the New York School of Law in order to take the New York bar examination. Martha's attorney moved the trial court to strike Fernando's motion because of Premalal's failure to comply with the Rules of Civil Procedure. It is well-settled law in Mississippi that a regularly admitted attorney's signature or the signature of the unrepresented party is required on all motions.

> The admission of a foreign attorney to practice *pro hac vice* in Mississippi is governed by the requirements of Miss. R. App. P. 46. Rule 46(a) states that "attorneys who have not been admitted to practice in the Supreme Court or the Court of Appeals shall not be permitted to argue orally, or file briefs or any paper in any cause in either Court." Rule 46(b)(2) states that a foreign attorney shall not appear in any cause except as allowed *pro hac vice* under Rule 46(b). Rule 46(b) 11(i) mandates that "any pleadings or other papers filed in violation of this rule shall be stricken from the record upon motion of any party or by the court. . . ." Miss. R. Civ. P. 11 requires the signature of regularly admitted attorneys on all pleadings and motions. . . .

9

***Dinet v. Gavagnie***, 948 So. 2d 1281, 1284 (Miss. 2007). Premalal was not regularly admitted to practice in this State and was not admitted pro hac vice pursuant to Rule 46(b). Premalal was also the only person who signed the motion to vacate.

¶19.    Fernando did execute a power of attorney appointing Premalal as her "true and lawful attorney to apply for and obtain Letters of Administration to the estate of [her] deceased husband and to attend to other related matters." Even so, execution of a power of attorney does not authorize an unlicensed attorney-in-fact to practice law here. It is unlawful for any person who has not been licensed according to law to engage in the practice of law in this State. Miss. Code Ann. § 73-3-55 (Rev. 2012); *see **In re Conservatorship of Riebel***, 625 N. W. 2d 480 (Minn. 2001) ("[T]he attorney-in-fact may make decisions concerning litigation for the principal, but a nonlawyer attorney-in-fact is not authorized to act as an attorney to implement those decisions."); ***Fravel v. Stark Cty. Bd. of Revision***, 728 N. E. 2d 393, 394 (Ohio 2000) (person not admitted to the bar cannot represent another in court on the basis of a power of attorney assigning *pro se* rights); ***Christiansen v. Melinda***, 857 P. 2d 345, 348-49 (Alaska 1993) (holding that principal cannot use a "power of attorney as a device to license a layman to act as her attorney in a court of record").[4]

¶20.    The purpose of supervisory control over the practice of law is for the protection of the public. ***Darby v. Mississippi State Bd. of Bar Admissions***, 185 So. 2d 684, 687 (Miss. 1966). Individuals not licensed to practice law may represent themselves in court, but not others.

---

[4]*See also  **Haynes v. Jackson***, 744 A. 2d 1050, 1054 (Me. 2000); ***Drake v. Superior Court***, 21 Cal. App. 4th 1826 (Cal. Ct. App. 1994); ***Risbeck v. Bond***, 885 S. W. 2d 749, 750 (Mo. Ct. App. 1994); ***Kohlman v. Western Pennsylvania Hosp.***, 652 A. 2d 849, 851-52 (Pa. Super. Ct. 1994).

Premalal is not licensed to practice law in the United States and cannot use power of attorney to circumvent the statutory requirements. Therefore, the chancery court did not err in dismissing Fernando's motion.

¶21. However, even if Fernando's motion had not been dismissed, the trial court lacked authority in this case to vacate the 1995 Florida divorce decree. Generally, states are required to recognize the judicial proceedings of sister states under the Full Faith and Credit Clause of the United States Constitution.[5] "State courts have the most solemn obligation to accord full faith and credit to the judicial proceedings of sister states." *Reeves Royalty Co., Ltd. v. ANB Pump Truck Serv.*, 513 So. 2d 595, 600 (Miss. 1987). "It is well settled that each state has exclusive control over the marital status of those domiciled within its borders. In divorce proceedings, each state may determine the status of the party domiciled therein, and such determination will be entitled to full faith and credit in every other state." *Evans v. Asphalt Roads & Materials Co.*, 72 S.E. 2d 321, 324 (Va. 1952).

¶22. Fernando argues that the Florida court had no personal or subject matter jurisdiction over the divorce action in 1995; thus, Fernando alleges that the Florida divorce decree can be collaterally attacked in this State. A court is not required to give full faith and credit to a foreign judgment when:

> (1) The foreign judgment was obtained as a result of some false representation without which the judgment would not have been rendered, *or*

---

[5]"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV § 1.

(2) The rendering court did not have jurisdiction over the parties or the subject matter.

***Cappaert v. Walker, Bordelon, Hamlin, Theriot and Hardy***, 680 So. 2d 831, 834 (Miss. 1996). Fernando alleges that the waiver of service of process was forged and that Fernando had no knowledge of the divorce until Sarath's death in 2008; thus the divorce decree was obtained by fraud and consequently is void.

> This Court noted that where the court rendering the judgment was without jurisdiction or where judgment was obtained by *extrinsic fraud,* then a state was not required to recognize the foreign judgment. Extrinsic fraud is "any fraudulent conduct of the successful party which was practiced outside of an actual adversary trial directly and affirmatively on the defeated party whereby he was prevented from presenting fully and fairly his side of the cause." Further, this Court stated that "[i]t is not fraud involving the merits of the case which may be thus attacked, but a fraud that enables a party to procure a judgment he otherwise would not have obtained which is subject to such an attack. This is an important distinction."

***Global Oceanic Enters., Inc. v. Hynum***, 857 So. 2d 659, 663 (Miss. 2003) (quotations omitted). "But the burden of undermining the decree of a sister state 'rests heavily upon the assailant.'" ***Cook v. Cook***, 342 U.S. 126, 128, 72 S. Ct. 157, 159, 96 L. Ed. 146 (1951).

¶23.    The chancery court stated that, "assuming arguendo that this court must address her claim, then it seems that she waived service of process in the Florida action and is banned from raising an objection now due to the statute of limitations." The chancery court instead was required to recognize the Florida divorce decree under the Full Faith and Credit Clause and lacked authority to vacate the decree. "A suit which attacks the validity of a divorce decree or seeks to modify the divorce decree should be brought in the court which entered the decree. . . ." 27A C.J.S. *Divorce* § 407, p. 622. "The state court having the better access

12

to the relevant factual information would appear to be the court that should retain jurisdiction." ***Daniel-Nordin v. Nordin***, 495 N.W. 2d 318, 325 (Wis. 1993).

¶24.    Clearly, the Broward County Circuit Court is the court that has better access to the relevant factual information. And Fernando first filed a motion to vacate the divorce decree in the Broward County Circuit Court in 2009. Fernando voluntarily withdrew the motion and inexplicably did not refile her motion in that court. Instead, Fernando asks the Wayne County Chancery Court in this State to vacate a Florida divorce decree entered in 1995. The State of Mississippi does not have a greater interest in the divorce proceeding than the State of Florida. Although Sarath did reside in Mississippi at the time of his death, neither party to the divorce action was domiciled in Mississippi at any time during the marriage of the parties. It was not until more than six years after the divorce decree was entered, and the marriage to Fernando was dissolved, that Sarath moved to Mississippi. There is no allegation that Sarath had even been to Mississippi before the Florida divorce decree. Instead, Sarath lived and worked in Florida for seven years and was residing in Florida at the time he filed for divorce. The state is an interested party in the marital status of its domiciliaries. ***Oberline v. Oberlin***, 29 So. 2d 82, 83 (Miss. 1947). As the United States Supreme Court stated in ***Estin***:

> Marital status involves the regularity and integrity of the marriage relation. It affects the legitimacy of the offspring of marriage. It is the basis of criminal laws, as the bigamy prosecution in ***Williams v. North Carolina*** dramatically illustrates. The State has a considerable interest in preventing bigamous marriages . . . . The interest of the State extends to its domiciliaries. The State should have the power to guard its interest in them by changing or altering their marital status and by protecting them in that changed status throughout the farthest reaches of the nation.

13

*Estin v. Estin*, 334 U.S. 541, 546-47, 68 S. Ct. 1213, 1217, 92 L. Ed. 1561(1948). Fernando initially filed the motion to vacate in the Florida court but voluntarily withdrew it. She cannot now come to this state and attack the validity of a Florida judgment issued in 1995 without providing a full record.

¶25.    Both the State of Florida and this state also have a considerable interest in preventing bigamous marriages. As such, there is a strong presumption of the validity of a divorce decree if a party remarries after the divorce. "The law in this state is well settled that a ceremonial marriage raises a presumption that a former marriage has been dissolved either by death or by divorce . . . ." ***Jeffreys v. Clark***, 168 So. 2d 662, 671 (Miss. 1964), *overruled on other grounds by **Sheffield v. Sheffield***, 405 So. 2d 1314 (Miss. 1981). "The presumption of its validity is so strong that proof of a former subsisting marriage, in order to be sufficient to overcome this presumption, must be so cogent and conclusive as to fairly preclude any other result." ***Smith v. Weir***, 387 So. 2d 761, 763 (Miss. 1980). It is undisputed that Sarath married Martha nine years after the Florida divorce decree was obtained. There is also evidence in the record that Sarath married a third woman, Toni Stewart, after the 1995 divorce decree was entered.

¶26.    And while Fernando complains that she had no notice of the divorce, and that the waiver was obtained fraudulently, the waiver in the record is facially valid. The waiver is signed, presumably by Fernando, and is notarized by a notary public in Columbo, Sri Lanka. "It is presumed that the officer making a certificate of acknowledgment has certified to the truth and has not been guilty of a wrongful or criminal action. The presumption has

14

been stated to be one of the strongest in the law." ***Nichols v. Sauls' Estate***, 165 So. 2d 352, 356 (Miss. 1964). Fernando voluntarily withdrew her motion to vacate in the Florida court and cannot now ask a court in this state to vacate a Florida judgment without a full record of the 1995 proceeding. *See **Vartsaba v. Vartsaba***, 873 N.Y.S.2d 238 (Table) (N.Y. Sup. Ct. 2008).

¶27.    Fernando next contends that evidence of the Sri Lankan divorce proceeding presents a prima facie case that the Florida divorce decree is void. Fraud must be proved by clear and convincing evidence. ***Nichols***, 165 So. 2d at 356. While it is strange that Sarath filed for a second divorce from Fernando in Sri Lanka, this fact does not rise to the level of clear and convincing evidence and does not establish a prima facie case of fraud. There are numerous other reasons why Sarath may have filed a second divorce action in Sri Lanka, and the fact that Sarath filed a second divorce action in a foreign country is not determinative.

¶28.    Fernando then argues that Florida lacked jurisdiction because Sarath was never domiciled in Florida and he kept his intention to remain in Sri Lanka. The record does not contain enough evidence to support Fernando's contention. As stated before, the full original record of the Florida divorce proceeding has not been provided. The record before this Court does not shed light on Sarath's subjective intent twenty years ago. According to the record, Sarath moved to Florida and remained there for seven years. Sarath was employed in Florida and had a Florida address. Thus, enough evidence in the record supports the Florida court's determination that Sarath was domiciled in Florida and that Florida had jurisdiction over the

15

marital status of one of its domiciliaries. *See In re Marriage of Kimura*, 471 N.W. 2d 869, 872 (Iowa 1991).

¶29.    Lastly, Fernando asserts that the Wayne County Chancery Court lacked jurisdiction to grant Martha's counterclaim, because she had thirty days to file her reply to Martha's counterclaim.  However, any procedural error that might have occurred was harmless, because the trial court did not have authority to vacate the Florida divorce decree. The chancery court correctly held that it was required to give full faith and credit to the divorce decree and that, therefore, Martha was Sarath's rightful beneficiary at the time of his death. In 2009, Fernando filed her motion in the appropriate court, the Broward County Circuit Court, and voluntarily withdrew the motion. Fernando inexplicably did not refile the motion in the State of Florida. Accordingly, the Wayne County Chancery Court lacked authorization to vacate the 1995 Florida divorce decree.

## CONCLUSION

¶30.    The Wayne County Chancery Court had no authority to vacate a Florida divorce decree issued more than fifteen years before, without a complete record, and with limited facts. Further, if the chancery court erred in holding a hearing before thirty days had passed from the filing of Martha's counterclaim, the error was harmless.  Fernando originally filed her motion to vacate the divorce decree in Florida, voluntarily withdrew her motion, and, without explanation, did not refile in Florida. Because the Broward County Circuit Court in Florida was the court that had access to the relevant information, the

16

divorce decree must be recognized in this state under the Full Faith and Credit Clause.

Therefore, the decision of the chancery court is affirmed.

¶31.    **AFFIRMED**.

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, PIERCE AND COLEMAN, JJ., CONCUR.  DICKINSON, P.J., AND LAMAR, J., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**