# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00007-SCT

*IN THE MATTER OF THE ESTATE OF HARPER MARIE PROVENZA, DECEASED: CODY W. GIBSON AND BENJAMIN L. PROVENZA*

*v.*

*DONNA McNATT AND REBECCA W. PROVENZA, EXECUTRIX OF THE ESTATE OF LOUIS J. PROVENZA, DECEASED, INDIVIDUALLY, AND AS A MEMBER OF NORTHSHORE GROUP, LLC; AND NORTHSHORE GROUP, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2022 |
| TRIAL JUDGE: | HON. SHEILA HAVARD SMALLWOOD |
| TRIAL COURT ATTORNEYS: | CODY WILLIAM GIBSON |
| | WAYNE E. FERRELL, JR. |
| | CLYDE X. COPELAND |
| | EDWARD C. BRESEE, JR. |
| | W. WRIGHT HILL, JR. |
| | CRAIG L. LOWELL |
| | DENNIS G. PANTAZIS, JR. |
| | DANA G. TAUNTON |
| | WILLIAM CORBAN GUNN |
| | D. MICHAEL ANDREWS |
| | PEYTON JAMES MOORE |
| | PAUL MANION ANDERSON |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | WAYNE E. FERRELL, JR. |
| ATTORNEYS FOR APPELLEES: | EDWARD C. BRESEE, JR. |
| | W. WRIGHT HILL, JR. |
| | NAVAN WARD, JR. |
| | D. MICHAEL ANDREWS |
| | DANA G. TAUNTON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 02/01/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     In this case, a father voluntarily relinquished all his parental duties and rights—including inheritance rights—in a Texas proceeding.  But after the child tragically died in a small plane crash in Hattiesburg, Mississippi, the father presented himself to the Forrest County Chancery Court as the child's sole wrongful-death beneficiary.  And he opened his child's estate so that he could pursue a wrongful-death claim against the estate of his estranged father, who was piloting the plane that crashed.

¶2.     Based on the Texas parental-rights termination, however, the Forrest County Chancery Court concluded that the father could not be the child's wrongful-death beneficiary.  The father has appealed to this Court.  But we discern no abuse of discretion and affirm.  Despite the father's insistence to the contrary, the Texas termination order is valid and not subject to collateral attack—in Texas or Mississippi.  And the father's voluntary affidavit to support the termination order was clear—the father expressly relinquished "the right to inherit from and through the child" and "any other right or duty existing between a parent and child by virtue of law."  This necessarily means that, before the child died, the father relinquished any right he would have had under Mississippi law to be the child's wrongful-death beneficiary.  So now that the child is deceased, the father cannot claim he is his child's wrongful-death beneficiary.

### Background Facts & Procedural History

¶3.     Benjamin L. Provenza's daughter Harper died in a small plane crash in Hattiesburg,

2

Mississippi, in 2019. She was just two years old. Benjamin had never married Harper's mother, Anna Calhoun, who also died in the plane crash, along with Benjamin's father, Louis Provenza. Before the tragedy, Anna had left Benjamin, who lived in Alabama, and had taken Harper to live with Benjamin's father in Texas. According to Benjamin, his relationship with his father was extremely strained, and Benjamin blamed his father for luring the mother of his child away from him.

¶4.    Twenty months before Harper died, at Anna's urging, Benjamin agreed to voluntarily terminate his parental rights in a Texas proceeding. Benjamin submitted to the Texas court an affidavit, witnessed and notarized, stating that he "freely and voluntarily g[a]ve and relinquished to Anna Lee Calhoun all my parental rights and duties." These rights and duties included "the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education; . . . the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child; . . . the right to inherit from and through the child; . . . [and] any other right or duty existing between a parent and child by virtue of law." Based on this voluntary affidavit, a Texas court entered an order terminating the parent-child relationship between Benjamin and Harper. *See* Tex. Fam. Code Ann. § 161.204 ("In a suit for termination, the court may render an order terminating the parent-child relationship between a child and a man who has signed an affidavit of waiver of interest in the child, if the termination is in the best interest of the child.").

¶5.    After Harper died, however, Benjamin presented himself to the Forrest County

3

Chancery Court as Harper's father and sole wrongful-death beneficiary. Benjamin hired an attorney who opened an estate and received letters of administration so that Benjamin could pursue a wrongful-death claim against his father's estate because Louis was piloting the plane when it crashed.

¶6. The executrix of Louis's estate—Benjamin's stepmother—moved to intervene and rescind the letters of administration issued to Benjamin's attorney. She brought to the Mississippi court's attention the Texas termination order, which was based on the affidavit Benjamin had submitted to the Texas court expressly relinquishing his parental duties and rights—including his right to inherit from Harper.

¶7. Giving the Texas termination order full faith and credit, the Forrest County Chancery Court determined Benjamin was "excluded as a wrongful death beneficiary and as an heir at law based on the voluntary relinquishment of his parental rights in the state of Texas." The chancellor further rejected Benjamin's argument that, as the natural father of an illegitimate child, he should be able to establish his right to inherit through Mississippi Code Section 91-1-15 (Rev. 2021). Because Benjamin had voluntarily relinquished any inheritance right he had—along with any obligation to support or care for his daughter while she was living—the chancellor ruled that Benjamin could not use Section 91-1-15 to "re-establish" his right to inherit after she died.

¶8. Indeed, the chancellor found it was "troubling that Benjamin voluntarily relinquished his rights in 2019 and now seeks to profit from her death." In the chancellor's words, "it goes against public policy to legally remove any financial or other responsibility to a child

4

during her lifetime, then allow that same parent to benefit after that child dies due to another's negligence."

¶9. Benjamin appealed to this Court. After the record was transferred to this Court, Benjamin petitioned this Court for permission to file in the chancery court a motion for relief under Mississippi Rule of Civil Procedure 60(b). *See Griffin v. Armana*, 679 So. 2d 1049, 1050 (Miss. 1996) ("[T]he adoption of [Rule] 60 conferred 'limited concurrent jurisdiction on the trial court to grant relief from a judgment even though an appeal has been perfected.'" (quoting *Moreland v. Riley (In re Est. of Moreland)*, 537 So. 2d 1345, 1347 n.1 (Miss. 1989))); Miss. R. Civ. P. 60 advisory comm. n. ("If the record on appeal has been transmitted to the appellate court then leave must be obtained from the appellate court . . . to move for relief under Rule 60(b)."). Permission was granted. And after due consideration, the chancellor denied Benjamin relief under Rule 60(b).

**Discussion**

### I.     The chancellor properly considered the Texas termination order and supporting voluntary affidavit.

¶10. Benjamin's primary contention is that the chancellor reversibly erred by relying on the Texas termination order. He spends much of his brief questioning the authenticity and validity of the Texas termination order and his supporting affidavit. But while Benjamin makes an emotional plea that he felt he had no choice but to sign the affidavit, which was presented to him at a time when he was struggling financially and mentally, he stops short of claiming that he did not in fact sign a voluntary release or that the release was somehow fraudulent or fake. So there is no question that the documents are what they purport to

5

be—an affidavit in which Benjamin voluntarily released his parental rights and duties and a resulting termination order.[1] *See* **Boyd v. State**, 175 So. 3d 1, 4 (Miss. 2015) ("Authentication simply establishes that 'a matter is what its proponent claims it to be.'" (quoting MRE 901)).

¶11. This leaves just two arguments against the chancellor's reliance on the Texas termination order—first, that it was never enrolled in Mississippi and, second, that it was void due to Texas's lack of subject matter jurisdiction.

### A. The Texas termination order did not have to be enrolled in Mississippi.

¶12. Citing Mississippi Code Section 11-7-305 (Rev. 2019), Benjamin argues the chancellor abused her discretion by relying on the Texas order because the foreign order was never enrolled in Mississippi. But Benjamin's reliance on Section 11-7-305 is misplaced. The reason for enrolling a foreign judgment under Section 11-7-305 is so a "judgment creditor" may enforce the judgment and collect against a "judgment debtor" in Mississippi.

---

[1] In her Rule 60(b) order, the chancellor emphasized Benjamin has never denied the existence or accuracy of the Texas termination order or his affidavit in support. Instead, he has merely argued the Texas documents were never properly authenticated and thus should never have been admitted into evidence. To resolve any *possible* question of the Texas order's authenticity, the chancellor ordered the trial record be supplemented with the entire record of the Texas termination proceeding, which the chancellor ruled had been properly certified under Mississippi Rule of Civil Procedure 44(a)(1). Following this order, Benjamin has filed with this Court several objections and motions directed at the order to supplement the trial court record. We deny these motions. The ordered trial-record supplementation has had no impact on our conclusion that Benjamin's challenges to the authenticity of the Texas termination order and supporting affidavit are without merit. Because we deny all of Benjamin's open motions in this Court, we also dismiss as moot the Appellees' motion to strike Benjamin's open motions. Consequently, Benjamin's motion for additional time to respond to the Appellees' motion to strike and his motion to strike Appellees' motion to strike are likewise dismissed as moot.

6

Miss. Code Ann. § 11-7-305. Section 11-7-305 simply does not apply to a foreign child-custody order like the one presented to the chancery court.

¶13. Instead, if *any* statute applies, it would be Mississippi Code Section 93-27-305 (Rev. 2021). Section 93-27-305 governs the registration in Mississippi of child-custody determinations made in other states. But the statute merely *permits* registration of out-of-state custody decisions—it does not require registration. *Id.* Under that statute, "[a] child custody determination issued by a court of another state *may* be registered in this state, with or without a simultaneous request for enforcement . . . ." Miss. Code Ann. § 93-27-305(1) (emphasis added); *see **Chandler v. City of Jackson Civ. Serv. Comm'n***, 687 So. 2d 142, 145 (Miss. 1997) (noting the general rule that may, when used in a statute, is permissive and not mandatory (citing C.J.S. *Statutes* § 380 (1953)).

¶14. In this case, there was no reason to register the Texas parental-rights termination order in Mississippi. None of the parties involved lived in Mississippi. Benjamin lived in Alabama, and Harper lived with her mother in Texas. The parties' only connection to Mississippi was that Forrest County happened to be where Harper and her mother tragically died in the crash. So the fact the termination order had not been registered in Mississippi did not preclude the chancellor from considering the order when determining if Benjamin was Harper's wrongful-death beneficiary.

### B. The Texas termination order was not subject to collateral attack.

¶15. Benjamin also argues the chancellor erred by giving full faith and credit to the Texas termination order without allowing Benjamin the opportunity to challenge the foreign order

7

on jurisdictional grounds. Benjamin asserts that, because Harper had lived in Texas less than six months, the Texas court lacked subject-matter jurisdiction over the termination proceeding. So the Texas termination order is void, he contends.

¶16. "Generally, states are required to recognize the judicial proceedings of sister states under the Full Faith and Credit Clause of the United States Constitution." *Sapukotana v. Sapukotana*, 179 So. 3d 1105, 1112 (Miss. 2015) (citing U.S. Const. art. IV, § 1). But "[t]he requirements of full faith are tempered by some basic limitations"—the primary limitation being "that full faith and credit does not apply if the rendering court did not have jurisdiction over the parties in the subject matter." *Sollitt v. Robertson*, 544 So. 2d 1378, 1381 (Miss. 1989) (citing *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 (5th Cir. 1982)). But "[w]hen a foreign judgment is collaterally attacked on subject matter grounds . . . [t]he courts of this state may inquire into no question other than those which would be considered upon collateral attack in the state in which the judgment was rendered." *Id.* This requires looking to the law of the state where the judgment was issued and whether such law would grant relief. *Id.*

¶17. In this case, Texas law is clear—the termination order may not be collaterally attacked on jurisdictional grounds. Under Texas law, "[a] direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights"—which is what happened in Benjamin's case—"is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." Tex. Fam. Code Ann. § 161.211(c). Once a Texas court determines it has jurisdiction over the termination proceeding, which the

8

Texas court *did* in Benjamin's case, Texas will not allow the termination order to be directly or collaterally attacked on jurisdictional grounds. ***In re Int. of D.S.***, 602 S.W.3d 504, 517 (Tex. 2020). Moreover, a Texas termination order "is not subject to collateral or direct attack" on *any* grounds "after the sixth month after the date the order was signed." Tex. Fam. Code Ann. § 161.211(a). The Texas termination order had been entered years prior to its being presented to the Mississippi chancellor to contest Benjamin's status as Harper's wrongful-death beneficiary. At this point, the Texas order could not be collaterally attacked. So the chancellor did not abuse her discretion by not allowing Benjamin to attempt to collaterally attack the order on jurisdictional grounds.

## II. The chancellor did not err by finding Benjamin could not be Harper's wrongful-death beneficiary under Mississippi law.

¶18. Alternatively, Benjamin argues that the Texas order terminating his parental rights does not preclude him from being Harper's wrongful-death heir under Mississippi law.

¶19. Benjamin relies on Mississippi's wrongful-death statute, Mississippi Code Section 11-7-13 (Rev. 2019), and asserts no provision in that statute excludes him as Harper's father from being a wrongful-death beneficiary. But it is not the *statute* the chancellor relied upon. It was the *voluntary relinquishment* of any rights Benjamin would have otherwise had under the statute that led the chancellor to exclude him as a wrongful-death beneficiary.

¶20. Benjamin tries to get around this by asserting that there is no Mississippi law that holds that the voluntary relinquishment of parental rights terminates a parent's right as a wrongful-death beneficiary. But Benjamin voluntarily relinquished his parental rights under Texas law. So it is Texas law that dictates the extent to which the voluntary relinquishment

9

impacted his right to be a wrongful-death beneficiary in Mississippi. *Cf. **Wise ex rel. Wise v. Aspey, Watkins & Diesel Attorneys at Law, P.L.L.C.***, 524 P.3d 827, 830 (Ariz. Ct. App. 2023) (relying on Maine law to determine the extent to which a parental-rights termination impacted wrongful-death beneficiary status in Arizona because Maine was the state that terminated the parental rights). Under Texas law, "an order terminating the parent-child relationship divests the parent and the child of *all legal rights* and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." Tex. Fam. Code Ann. § 161.206(b) (emphasis added); *see also **Holick v. Smith***, 685 S.W.2d 18, 20 (Tex. 1985) ("A termination decree is complete, final, irrevocable and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit."). So the order necessarily divested Benjamin of the right to be Harper's wrongful-death beneficiary.

¶21. Moreover, in his voluntary affidavit, Benjamin expressly relinquished "any other right or duty existing between a parent and child by virtue of law." And having represented to Texas that he was relinquishing all rights, the chancellor did not abuse her discretion by preventing him from coming to court in Mississippi and asserting he has retained the legal right to be Harper's sole heir and wrongful-death beneficiary.

¶22. Still, Benjamin insists that, without subsequent adoption, his right to inherit from Harper and be her wrongful-death beneficiary remained intact. But in his affidavit, Benjamin acknowledged that he "fully underst[oo]d that the termination suit may or may not be combined with a suit to adopt my child, . . . [and] that either way, once the Court terminates

my parental rights, I have no further say concerning my child, whether or not my child is adopted then or at some later time." So the relinquishment of rights was not conditioned on Harper's subsequently being adopted. Nor does Texas law place such a condition on the severing of rights between parent and child. Tex. Fam. Code Ann. § 161.206.

¶23. Finally, Benjamin argues he has met all the requirements to inherit from Harper under Mississippi Code Section 91-1-15. This, he suggests, allows him to still be Harper's wrongful-death beneficiary under Section 11-7-13. Under Section 11-7-13, the wrongful-death provisions also apply to the natural father of an illegitimate child if he "has or establishes the right to inherit from the deceased under Section 91-1-15." Miss. Code Ann. § 11-7-13. But we agree with the chancellor that Benjamin cannot use Section 91-1-15 to _re_-establish the parental rights he voluntarily relinquished. The issue before the chancellor was not whether Benjamin established the right to inherit through Harper before she died. The issue is whether Benjamin _relinquished_ the right to inherit through Harper before she died, which he clearly did.

¶24. Further, even if Section 91-1-15 provided Benjamin a statutory mechanism to become Harper's wrongful-death beneficiary, it still would not apply under the facts. Section 91-1-15 prohibits a natural father from inheriting through an illegitimate child "unless the father has openly treated the child as his, and has not refused or neglected to support the child." Miss. Code Ann. 91-1-15(3)(d)(i). Benjamin voluntarily relinquished "the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education[.]" And by choosing to do so, Benjamin "knowingly and willingly forfeited any

11

benefit, or burden, arising from openly treating [the child] as his own and supporting him during his lifetime." *Stanton v. Patterson (In re Est. of Patterson)*, 798 So. 2d 347, 349 (Miss. 2001). As this Court has made clear, a father in this situation "cannot have it both ways." *Id.* As the chancellor aptly stated, a father cannot agree "to legally remove any financial or other responsibility to a child during her lifetime, . . . [but then still] benefit after that child dies due to another's negligence."

¶25. Bottom line, the chancellor did not abuse her discretion by determining that, based on the Texas termination order, Benjamin could not establish he was Harper's wrongful-death beneficiary. We affirm.

¶26. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**